[No. 32805.   Department One.   November 15, 1954.]

A. B. WARD, *Respondent*, v. PAINTERS' LOCAL UNION No. 300 et al., *Appellants*.[1]

[1]Reported in 276 P. (2d) 576.

L. *Presley Gill*, for appellants.

*Joseph D. Holmes*, for respondent.

FINLEY, J.—This is an action for civil libel. The first trial of the lawsuit resulted in a verdict and judgment for the plaintiff in the sum of $21,250. On appeal, we reversed the judgment because of error in instructions to the jury (*Ward v. Painters' Local Union*, 41 Wn. (2d) 859, 252 P. (2d) 253). The second trial resulted in a jury verdict for plaintiff, totaling $37,719.95 on three causes of action. On the first cause of action, judgment was entered against Robert Glynn, the local union, and the three union trustees (M. S. Slettebo, C. M. Foy, and William J. Carroll) in the sum of $27,719.95. On the second cause of action, judgment was entered against the three above-mentioned trustees and the local union in the sum of $7,500. On the third cause of action, judgment was entered against R. J. Krabler and the local union in the sum of $2,500. All defendants have appealed.

The facts are as follows: A. B. Ward was financial secretary of Painters' Local Union No. 300 for a period of nine years prior to November 15, 1949. On that date, at a union meeting, Robert Glynn preferred written charges against Ward in which Ward was accused of *misappropriation and embezzlement*. As a result thereof, Ward was first temporarily suspended as financial secretary by vote of the union members, pending an investigation of the charges. He was thereafter tried by a union trial committee of seven union

officials. At the conclusion of the trial, a majority of five of the committee prepared findings and recommendations. This report found that the facts established at the trial did not substantiate the charge that Ward had misappropriated and embezzled union funds. This majority report did find, however, that Ward had failed to account for receipts and disbursements in some instances, and recommended that Ward be fined five hundred dollars, and that he be restored to his position as financial secretary.

One member of the trial committee submitted a minority report in which he found Ward *guilty of all charges of misappropriation and embezzlement*, and recommended that he be removed from office. One member of the trial committee refrained from voting. At a union meeting of January 17, 1950, the majority report, which was quite favorable to Ward, and the minority report, which was quite unfavorable to Ward, were read to the union membership. The minority report quoted Glynn's charges of *misappropriation and embezzlement*, and stated that the charges were true in all respects. Thereupon, the trustees presented a letter to the recording secretary in which they stated that they could not reconcile themselves to the majority report and would resign from their offices as trustees. *This letter was read to the membership meeting* by the recording secretary of the local union. Throughout the litigation of this matter in court, the parties have not disagreed that the gist of the letter of the trustees was that they would resign if the majority report was accepted, and Ward was merely fined and then reinstated to his office in the local union. In any event, the recommendations of the *majority report* were then submitted to a vote of the membership. Its recommendations (reinstatement to office and imposition of a fine) were rejected. As a result, Ward's suspension became permanent.

Several months thereafter, in April, 1950, the trustees presented at a union membership meeting a report purporting to show a comparison of union expenditures (a) for the twenty-eight and one-half month period just prior to Ward's suspension, and (b) for the four and one-half month period subsequent to Ward's suspension during which the trustees

operated the office. After certain tabulations, the report concluded:

"$2,060.67 represents estimated shortages between expenditures under the former Financial Secretary and Trustee's office experience."

The membership voted to send this report to each member of the union and to Ward's bonding company.

At a still later time, in October, 1950, a letter from Ward, requesting accrued vacation pay, was read at a union meeting. According to respondent's evidence, appellant Krabler thereupon moved that the letter be tabled "until the union was reimbursed for the money that Ward had absconded with." This motion was carried by a vote of the membership.

The complaint sets up three separate causes of action. The first cause is based upon the written charges filed against Ward by Glynn, and upon certain acts of the trustees and actions of the union, emphasizing and calling the attention of union members to the charges filed by Glynn. The second cause of action is based upon the preparation and publication by the union trustees and the union of their report of "estimated shortages" in the union's accounts during the period Ward was financial secretary. The third cause of action is predicated upon Krabler's alleged statement that Ward had absconded with union money.

In the first decision of this case (involving the same three causes of action as in the instant case), this court decided the following matters, which are pertinent to the present appeal: (a) we approved the trial court's holding in the first trial that the statement contained in the trustees' schedule or report (which was the basis for the second cause of action) was libelous *per se*; (b) we also held that the trial court's instruction in the first trial (to the effect that the statements pertinent to all causes of action were libelous or actionable *per se*) became the law of the case as to the first and third causes of action, since no exception was taken to the instruction with regard to the first and third causes of action; (c) we held that the publication of the trustees' re-

port to members of the union and Ward's bonding company was conditionally privileged. However, we stated there was a jury question as to whether there had been a publication to nonunion members, and, that if there had been such publication to nonunion members, the conditional privilege was lost as to such occasions; (d) we found that the evidence upon the defense of truth was in sharp conflict and presented a proper question for the jury in each of the three causes of action; (e) we decided that the publications alleged in the first and third causes of action were conditionally privileged as a matter of law.

As to conditional privilege, we said that the trial court's instruction that this defense was available, whether or not the publications were found false, had become the law of the case in the absence of any exception to the instruction. With respect to this defense, we stated that the question of abuse of the privilege by reason of the appellants' alleged malice should have been submitted to the jury. On this latter point we specifically directed that upon retrial the question of the appellants' belief and their reason for belief in the truth of the statements be submitted to the jury. We further stated that upon a new trial of this case the jury should be instructed that, the privileged nature of the occasions having been established, the burden of proof was upon the plaintiff to establish an abuse of the privilege.

In the present appeal, the appellants again assign error to the trial court's refusal to grant a judgment n.o.v. or, in the alternative, a new trial. Error is also assigned to the trial court's refusal to grant a motion to dismiss the action, and to the giving of certain instructions by the trial court.

These assignments raise many of the same issues which were urged at the first trial and appeal, namely: (a) whether the trustees' report, which was involved in the second cause of action, was libelous *per se*, as instructed by the trial court; (b) whether this report was conditionally privileged or was published to persons outside the union, and, therefore, was not privileged as to such occasions; (c) whether the defense of truth was proved; and (d) whether the publications were made in good faith and without malice so as to fall within

the protection of conditional privilege. We shall discuss these issues in the order enumerated.

▮ (a) We need not reconsider appellants' assertion that the trustees' report, which was involved in the second cause of action, was not libelous *per se*. In our previous decision in this case (*Ward v. Painters' Local Union, supra,* p. 865), we said of the report:

"The communication could have had but one imputation to the union members and the bonding company. It was libelous *per se*, and the court's instruction was proper."

This determination became the law of the case and is controlling upon this appeal.

▮ (b) Appellants' contention that the trustees' report was privileged as a matter of law, and their exception to instruction No. 8 regarding the privileged character of the report, are without merit. There was some evidence which, if believed by the jury, would justify the conclusion that the libelous trustees' report was mimeographed and handled by one or more persons who were neither members nor employees of the appellant union. There was also evidence that the union's mailing list included the names of persons suspended from the union, and who, under the constitution, had no voting rights in appellant union. The significant portions of the trial court's instruction No. 8 read:

"With regard to said Exhibit 5, which has been referred to as the 'Trustees' Schedule' (the publication, if any, of this is the basis of plaintiff's second cause of action), you shall determine

"(a) Whether or not it was mimeographed or mailed by persons not members of the defendant local union, or

"(b) Whether or not it was mailed to persons who were not at the time of said mailing members of said defendant local union, and in the event you find that publication was made on either or both of those occasions, then, as to such occasion or occasions, you should disregard the defense of conditional or qualified privilege and consider only the defense of truth."

This instruction was taken almost verbatim from the directions of this court given in the first decision of this case, and was in all respects proper.

■ (c) With respect to the appellants' defense of truth, we said in the first decision:

"In this case, the evidence upon this defense [of truth] is in sharp conflict, and presents a proper question for the jury in each cause of action. No error is assigned upon any instruction in this regard. Considering the evidence and the reasonable inferences from it most favorably to the plaintiff, as we are obliged to do, we cannot say that a verdict adverse to defendants on this issue would not be supported by substantial evidence. Their assignments of error in regard to it are without merit." (p. 865)

Having reviewed the evidence presented at the second trial, we are not disposed to change our view that there was substantial evidence to support the verdict for the plaintiff in so far as the defense of truth is concerned.

■ (d) Appellants contend that they established their defense of good faith, and, as a corollary, plaintiff failed to prove malice with respect to the libelous publication. From the evidence, the jury was entitled to believe that appellants did act maliciously. This issue was submitted to the jury under instructions suggested by the first decision. No exceptions were taken to these instructions.

At the trial in the superior court, counsel for appellants moved that each of the three causes of action be dismissed as to all appellants. With reference to the first cause of action, it is argued that both the trustees and the union acted in good faith. This contention was renewed on this appeal and has been disposed of hereinabove.

■ It was further contended that the union *had committed no libelous acts*, because the ouster of Ward from his position as financial secretary and the consequent damages suffered by him resulted from his "failure to account for receipts and disbursements," as found in the *majority report*. Counsel for appellants argues that the complaint in the first cause of action alleges that Ward was ousted because of charges of embezzlement and misappropriation, but that there was no evidence presented in support of these allegations. The facts as developed by the evidence are as follows: Both the majority report of the trial committee and their

minority report, the latter of which found Ward guilty of *misappropriation and embezzlement*, were before the union membership. The majority report; with its findings only of the "failure to account for receipts and disbursements," recommended a fine and reinstatement of Ward. The membership voted to reject these recommendations. The effect of the vote was to adopt the recommendations of the minority report that Ward be removed from his office permanently. Appellants now argue that, although the union membership voted against the recommendations of the majority report, they somehow adopted the findings of that report, *i.e.*, that Ward did not embezzle or misappropriate, but merely failed to account for receipts and disbursements. The more natural conclusion, and the one which the jury apparently arrived at, is that the rejection of the majority recommendations constituted a rejection of the majority findings as well. The jury was entitled to believe that the decision to continue Ward's suspension permanently was directly associated with and further implemented the libelous statements pleaded as the basis for the first cause of action.

Except for the argument just discussed, and the argument that the union acted in good faith (which we have disposed of hereinabove), no argument was advanced by appellants' counsel in the second trial in support of the proposition that the union committed no libelous acts. Similarly, no such argument has been presented to this court, with the exception of two black-type headings or captions in appellants' brief. In other words, at page thirty-five of appellants' brief, there is the following heading: "D. The union never uttered nor published any of the alleged libelous statements." The only argument under this heading which relates to the first cause of action is the single sentence, "The ouster of the respondent was not because of embezzlement or misappropriation." At page seventy-nine, there is found the following heading: "The Union Never Made Any Libellous Statements." Following this heading, counsel for appellants again fails to argue the contention that the union never made any libelous statements. Appellants' counsel merely reiterates that the union voted on the majority report

with its finding that Ward failed to account for union funds. We have already pointed out that this argument is not sound. If there was any further argument that counsel could have made in support of the theory that the union committed no libelous acts, such argument has not been presented, either in the trial court or upon appeal, and must be considered waived. In passing, we note that in the *first appeal, with notice in the written opinion to appellants' counsel,* we stated that matters must be argued, before this court would consider them, saying:

"Defendant union contends that the judgment against it cannot be sustained because (1) it did not publish any of the alleged defamatory statements, (2) the trustees were not general agents of the union and their acts did not become the acts of the union, and (3), by voluntarily joining an association, the rules of which provide for the publication of the honest findings of investigators, plaintiff consented to the publication of the alleged defamatory statements against him. None of these issues is before us. The record does not show that the first and third were presented to the trial court, either by a proposed instruction or otherwise, and the proposition involved in the second was the subject of an instruction to which no exception was taken by defendants. We, therefore, cannot consider any of these contentions, and express no opinion upon them." (*Ward v. Painters' Local Union, supra,* p. 868.)

We have considered appellants' other assignments of error and have found them to be without merit, with the exception of assignment of error No. 12. It is asserted that the trial court erred in refusing "to give Appellants' Proposed Instruction 14 on the question of minimizing the damages." The proposed instruction states:

"You are instructed, that if you find under other instructions of the Court that the plaintiff is entitled to damages on account of loss of wages, then you are instructed that you shall not allow plaintiff damages for loss of wages during the period from October, 1952, to September, 1953, if you find that during that time the plaintiff could have secured work as a painter through the union's dispatch offices, but that the plaintiff had nevertheless neglected to seek such work, to the extent that the plaintiff could have earned additional wages through the Union's dispatch office."

In connection with this assignment of error, we note that Ward testified at the trial in considerable detail respecting his damages resulting from loss of employment. He stated the exact sum he would have earned had he not been ousted from the office of financial secretary. He further stated the much smaller sum which he did in fact earn after the date of his ouster. Ward's counsel, in his argument to the jury, argued that the difference between these amounts was an element of damages.

Appellants' witnesses testified that, during the twelve-month period from October, 1952, to September, 1953, Ward, who was a qualified general painter and still a member of the union, could have secured work in his trade for at least four months, had he sought such work through the union hiring hall. It was further stated that his wages for such work would have been $1,600.

Ward testified that, during this time, he did not seek employment through the union office. He stated as his reason that painters his age were not hired through the union hall. However, he admitted that, just prior to October, 1952, and just after September, 1953, he had been able to find employment as a painter.

█ █ It is clear that respondent's theory of damages, as presented to the jury, included loss of wages. There was abundant evidence that Ward could have reduced his damages attributable to loss of earnings in the amount of sixteen hundred dollars, had he attempted to secure employment through the union. Appellants were entitled to have their theory on mitigation of damages presented to the jury by their proposed instruction. It is the general rule that,

"Where one person has committed a tort, breach of contract, or other legal wrong against another, it is incumbent upon the latter to use such means as are reasonable under the circumstances to avoid or minimize the damages. The person wronged cannot recover for any item of damage which could thus have been avoided." McCormick on Damages 127, § 33; Accord, *Hoff v. Lester*, 25 Wn. (2d) 86, 168 P. (2d) 409, 164 A. L. R. 751.

This principle of law has been applied to situations where the damages sued for include loss of earnings for wrongful

discharge of an employee. McCormick on Damages 627, § 159; *Sullivan v. Boeing Aircraft Co.*, 29 Wn. (2d) 397, 187 P. (2d) 312, 174 A. L. R. 566. Although the wrong upon which this action is predicated is libel, loss of employment was an important element of damages proved by respondent with respect to his first cause of action. In reason, the doctrine of avoidable consequences applies in such a case. Because the amount involved is comparatively small, and there have already been two lengthy trials and two appeals, it would not be in the interest of justice, nor is it necessary, to remand the case for a complete new trial or even for a trial limited to the question of damages as a result of this error. We are of the opinion that the proper disposition is to affirm the judgment in the first cause of action, conditionally, pursuant to the authority of *Gray v. Wilson*, 34 Wn. (2d) 524, 208 P. (2d) 1171, and the authorities cited therein.

If, within thirty days after the remittitur goes down, respondent shall file an agreement to remit from the judgment in the first cause of action the amount of sixteen hundred dollars (the amount which, according to the evidence, Ward could have earned in mitigation of his damages), the judgment will stand affirmed in the reduced amount; otherwise, the judgment will be reversed and the cause remanded with instructions to grant a new trial as to the first cause of action. The judgments as to the second and third causes of action are affirmed unconditionally.

Since this reduction is comparatively small, and since appellants devoted only one and one-half pages of their brief to this assignment of error, we will award costs to respondent.

GRADY, C. J., MALLERY, HAMLEY, and OLSON, JJ., concur.

January 20, 1955. Petition for rehearing denied.