[No. 11157-1-III.   Division Three.   March 10, 1992.]

METROPOLITAN MORTGAGE & SECURITIES CO., INC., *Respondent*, v. JAMES R. BECKER, ET AL, *Appellants*.

---

*Douglas M. O'Coyne, Sr.,* and *O'Coyne & Phillips,* for appellants.

*Susan A. Thomson,* for respondent.

MUNSON, J. — James and Pamela Becker executed a promissory note and deed of trust as vendees of a parcel of land with prior encumbrances. Metropolitan Mortgage & Securities Co., Inc., acquired the promissory note and the deed of trust by assignment from the original payee, Paul and Carol Slater. The Beckers' subsequent purchasers defaulted to a vendor senior to the Beckers. The secured property was then forfeited. Metropolitan successfully brought suit to enforce the Beckers' promissory note and also sought reasonable attorney fees pursuant to the note. The Beckers appeal, contending the promissory note is unenforceable because: (1) Metropolitan was a transferee

without negotiation; (2) the promissory note was extinguished by the property forfeiture under RCW 61.30-.100(2)(a); and (3) Metropolitan had the duty to mitigate its damages. In addition, the Beckers challenge the award of attorney fees to in-house counsel as excessive.

The subject real property has been sold numerous times since 1975. In 1978, Robert and Nancy Osborn executed a real estate contract conveying their interest to the Slaters. On September 29, 1984, the Slaters sold their interest for $20,000 to the Beckers who assumed the existing balance on the Osborn-to-Slater real estate contract and executed a separate promissory note for $4,347.46 and a deed of trust. The note provided for reasonable attorney fees.

The Beckers subsequently conveyed their interest in the property, which was then conveyed again. The Beckers were never relieved of the obligations created under their transaction with the Slaters.

On January 13, 1988, the Slaters assigned their Slater-Becker note and deed of trust to Metropolitan.

On October 10, 1988, and thereafter, the Beckers failed to make payments on the promissory note. Metropolitan exercised its right to accelerate payments on the note, also seeking interest and reasonable attorney fees.

On November 2, 1988, the Osborns forfeited the subject real property following default on the Osborn-to-Slater real estate contract. Metropolitan admits it no longer holds a lien against the real property and claims payment as an assignee of the now unsecured promissory note.

Metropolitan then moved for summary judgment, which resulted in an order dismissing Metropolitan's complaint without prejudice on August 11, 1989. Metropolitan moved for reconsideration and the Beckers responded, requesting attorney fees of $4,685.20. After a combined hearing, Metropolitan's motion for reconsideration was granted and the case was ordered to proceed to arbitration. The arbitration hearing was held on May 3, 1990.

The Beckers requested a trial de novo and sealing of the arbitration award. Metropolitan moved for partial summary judgment and, on July 31, 1990, all issues were resolved in Metropolitan's favor. The trial court entered judgment in favor of Metropolitan on October 23, 1990, including attorney fees of $4,900.

The Beckers first contend Metropolitan cannot enforce the note as a transferee absent negotiation by delivery with an endorsement. They are mistaken.

■ The rights of the transferor are vested in the transferee by transfer of the instrument. RCW 62A.3-201(1). In a dispute between two claimants, the original payee and assignee, "endorsement of the promissory note was not required to effectively transfer it." *In re United Home Loans, Inc.*, 71 Bankr. 885, 889 (W.D. Wash. 1987). Other jurisdictions have permitted enforcement of an assigned promissory note without negotiation.[1]

RCW 62A.3-201(3) and U.C.C. § 3-201 comment 8 require a transferee who takes without an endorsement to offer proof of acquisition, which creates a presumption the transferee is entitled to recover on the instrument. Metropolitan has offered unrefuted proof of the Slaters' assignment to it.

Metropolitan can enforce the note without negotiation.

The Beckers next contend the note became unenforceable when their superior lienholder forfeited the previous lienholder's interest in the subject property.

The Beckers' note and deed of trust were assigned to Metropolitan on the same date, with each document referencing the other. From this, the Beckers, relying on RCW 61.30.100(2)(a), contend the note and deed of trust, both integral parts of the transaction between the Slaters and themselves, were extinguished by the Osborn forfeiture. RCW 61.30.100(2)(a) provides, in part:

---

[1]*Fore v. Bles*, 149 Ariz. 603, 721 P.2d 151 (1986); *Griffith v. Griffith*, 250 Ark. 845, 467 S.W.2d 737 (1971); *Pay Ctr., Inc. v. Milton*, 632 P.2d 642 (Colo. Ct. App. 1981); *Hazel v. Tharpe & Brooks, Inc.*, 159 Ga. App. 415, 283 S.E.2d 653 (1981); and *Jerstad v. Warren*, 73 Or. App. 387, 698 P.2d 1033 (1985).

> The purchaser, and all persons claiming through the purchaser or whose interests are otherwise subordinate to the seller's interest in the property who were given the required notices pursuant to this chapter, shall have no further rights in the contract or the property . . .[.]

Metropolitan admits the forfeiture extinguished its security interest created by the deed of trust but maintains the debt remains as a separate obligation, regardless of RCW 61.30-.100.

■ ■ "In transactions involving both notes and mortgages, the notes represent the debts, the mortgages security for payment of the debts. Either may be the basis of an action." *American Fed. Sav. & Loan Ass'n v. McCaffrey*, 107 Wn.2d 181, 189, 728 P.2d 155 (1986) (citing *Seattle Sav. & Loan Ass'n v. Gardner J. Gwinn, Inc.*, 171 Wash. 695, 698, 19 P.2d 111 (1933); *Wilson v. Kirchan*, 143 Wash. 342, 346-47, 255 P. 368 (1927); G. Nelson & D. Whitman, *Real Estate Finance Law* § 8.1, at 594-95 (2d ed. 1985)). A deed of trust is similar to a mortgage in this type of transaction. *See United Home*, at 889; RCW 61.24.010 (deeds of trust subject to all mortgage laws). Metropolitan correctly states that the only effect on the Beckers' subordinate note that the forfeiture had is that the note is now unsecured. Metropolitan is entitled to enforce the promissory note.

Next, the Beckers contend Metropolitan breached its duty to mitigate damages, arguing that Metropolitan had the opportunity and financial resources to (1) cure the deficiency; (2) pay the entire "upstream" balance; or (3) purchase the property after forfeiture for profit.

■ While an injured party cannot recover damages which could reasonably have been avoided by reasonable efforts and expenditures, *Ward v. Painters' Local Union 300*, 45 Wn.2d 533, 542, 276 P.2d 576 (1954), this action is for an unpaid debt, not damages.

The trial court correctly determined Metropolitan had no duty to mitigate.

The Beckers next contend attorney fees should not be awarded Metropolitan when the matter was handled by its

salaried, in-house counsel. They argue that to allow attorney fees in this case would allow Metropolitan to reap a windfall at the expense of the unaware consumer and would violate the ethical prohibition against fee splitting between an attorney (in-house counsel) and a nonattorney (Metropolitan).

■ In an action on contract which provides for attorney fees, reasonable fees shall be awarded to the prevailing party. RCW 4.84.330. The Beckers' promissory note provides for reasonable attorney fees if the note is placed in an attorney's hands for collection. The discretion of the trial court is, therefore, limited to deciding the amount of reasonable fees. *Singleton v. Frost*, 108 Wn.2d 723, 727, 742 P.2d 1224 (1987). "An interpretation allowing the trial court to deny recovery of reasonable attorney's fees at its discretion or whim would render the statute meaningless." *Singleton*, at 729.

■ No Washington authority was cited in support of the denial of fees to Metropolitan. The Beckers rely in part on *Continental Ins. Co. v. United States Fid. & Guar. Co.*, 552 P.2d 1122, 1128 (Alaska 1976) (prohibited in-house fees), *disapproved in Farnsworth v. Steiner*, 638 P.2d 181 (Alaska 1981) (disapproves denial of prejudgment interest); *Greater Anchorage Area Borough v. Sisters of Charity*, 573 P.2d 862, 863 (Alaska 1978) (allowed in-house fees to public interest firm engaging solely in litigation); *Escanaba & L.S.R.R. v. Keweenaw Land Ass'n*, 156 Mich. App. 804, 817-18, 402 N.W.2d 505, 511-12 (1986) (prohibits in-house fees unless counsel is paid more than normal salary for the work). These cases are not dispositive. We agree with the court's statement in *Greater Anchorage*, at 862-63, in explaining its position in the earlier case, *Continental Ins.*, at 1128: "We did not intend to express a prohibition against awarding attorney's fees when a party's active representation in litigation is by in-house counsel rather than retained counsel."[2]

---

[2]In *West Coast Stationary Eng'rs Welfare Fund v. Kennewick*, 39 Wn. App. 466, 475, 694 P.2d 1101 (1985), the Kennewick city attorney was awarded attorney fees. Federal cases have also granted attorney fees to in-house counsel. *See*

The Beckers contend the award of attorney fees was unreasonable. They argue for limiting the award to the actual hours expended multiplied by an hourly rate derived from the actual salary.

■ Calculation of attorney fees may take into consideration the cost accounting for corporate, salaried counsel. A private employer may pay in-house counsel less than outside counsel, but the private employer of in-house counsel has expenses other than salary and benefits, including but not limited to such overhead expenses as rent for counsel space, library, vacation, and sick pay. Here, in-house counsel's efforts in this extensively drawn out procedure have required counsel shifting time from other areas.

■ The starting point for making an award of attorney fees is to multiply a reasonable hourly rate[3] by the number of hours expended, the "lodestar" amount. *Bowers v. Transamerica Title Ins. Co.*, 100 Wn.2d 581, 675 P.2d 193 (1983). The burden of justifying a deviation from the lodestar amount is on the party proposing the deviation. *Bowers*, at 598. Here, the Beckers allege Metropolitan's in-house counsel are paid $15 per hour rather than the requested $100 hourly rate. There is no support for this allegation in the record.

■ Metropolitan presented two affidavits for attorney fees establishing the hours expended and an hourly rate. The trial court awarded the corresponding amount. Metropolitan's fees were only $214.80 more than the amount requested by the Beckers' attorney 1½ years earlier, after which an arbitration hearing and numerous additional hear-

*PPG Indus., Inc. v. Celanese Polymer Specialties Co.*, 840 F.2d 1565, 1570 (Fed. Cir. 1988); *Goodrich v. Department of Navy*, 733 F.2d 1578, 1579 (Fed. Cir. 1984), *cert. denied*, 469 U.S. 1189 (1985).

[3]Courts have shown their concern over preventing the employer of in-house counsel to reap windfall profits at the expense of the consumer based on grants of attorney fees by questioning the use of a private (outside counsel charge) standard. *See Goodrich v. Department of Navy*, 733 F.2d 1578, 1579-80 (Fed. Cir. 1984), *cert. denied*, 469 U.S. 1189 (1985). An alternative approach is the use of cost plus overhead as the rate. *PPG Indus., Inc. v. Celanese Polymer Specialties Co.*, 840 F.2d 1565, 1570 (Fed. Cir. 1988).

ings were held and depositions taken. Attorney fees will be reversed only if "manifestly unreasonable or based upon untenable grounds or reasons." *Progressive Animal Welfare Soc'y v. UW*, 114 Wn.2d 677, 688-89, 790 P.2d 604 (1990). We find no error.

■ Last, the Beckers contend the award of attorney fees warrants reversal based on the absence of a full evidentiary hearing and specific findings of fact, relying on *Progressive Animal Welfare Soc'y v. UW*, 54 Wn. App. 180, 186-87, 773 P.2d 114 (1989), *remanded*, 114 Wn.2d 677, 790 P.2d 604 (1990). Sufficient information concerning fee determination is necessary for meaningful review. *Progressive*, 54 Wn. App. at 186. Here, the trial court indicated on the record the information relied on, which included a specific accounting of time spent on specific tasks and an hourly rate. Although the trial court did not specifically address the basis for using the $100 rate, this does not require reversal. The Beckers offered no empirical data to support their objection.

The trial court did not abuse its discretion in the award of fees.

Affirmed.

SHIELDS, C.J., and SWEENEY, J., concur.