[No. 22117.   Department Two.   August 8, 1930.]

B. & B. BUILDING MATERIAL COMPANY, INCORPORATED, *Respondent,* v. WINSTON BROTHERS COMPANY, *Appellant.*[1]

*Peters, Powell, Evans & McLaren,* for appellant.
*Nelson R. Anderson,* for respondent.

FULLERTON, J.—In the year 1928, the appellant, Winston Bros. Company, was engaged in the work of constructing a power plant on the Skagit river at a place called Diablo. A part of the work consisted of the removal of rock and other material from certain places on the banks and in the bed of the river. The material, preparatory to removal, was loosened by

[1]Reported in 290 Pac. 839.

blasting. It was then gathered up by a steam shovel and loaded into dump trucks, from whence it was carried to a dumping ground and there deposited. The place selected as a dumping ground at the time here in question was on the top of a somewhat steep declivity. The trucks, on reaching the declivity, were turned and backed to its edge, then by means of a hoisting gear the front end of the bed of the truck was raised, causing the material to slide out of its rear end and fall over the declivity.

The respondent, B. & B. Building Material Company, Inc., owns a number of trucks, such as those above described, which it uses in connection with its business. Some time in May, 1928, the appellant approached the respondent and sought to hire two of the respondent's trucks for a period of ten days for use in its work. The respondent agreed to let the trucks to the appellant, and a verbal contract was entered into, expressing the terms and conditions of the letting. The terms of the contract, in the main, are not in serious dispute. The trucks were in the city of Seattle at the time, and the respondent agreed to send them on their own power to a place called Rockport, where they were to be received by the appellant and from thence transported by it to the place of work by rail. The appellant agreed to pay for the use of the trucks $3.25 per hour for the time they were actually in use on the work, and to allow for a day of eight hours for the time taken in transporting the trucks from Rockport to the place of work. The respondent agreed to pay the wages of the drivers of the trucks, and to pay for such oil and gasoline as the trucks used while in operation. It was also a part of the contract that the trucks were, at the conclusion of the term of the contract, to be returned to Rockport by the appellant and there delivered to the respondent.

As to the further terms of the contract, there is a dispute between the parties. The respondent contends that the trucks were turned over to the absolute direction and control of the appellant at Rockport, and that thereafter the appellant was to be responsible for any injury to the trucks arising from accident or negligence. The appellant, on the other hand, contends that the agreement was that the respondent was to have control of the management and operation of the trucks through their drivers, and that it had no other right to control them than to direct the work they were to perform.

The trucks were sent to the work in the manner agreed upon, the one on May 12, 1928, and the other a few days later, each in charge of a driver hired by the respondent. On reaching the place of work, the trucks were put to work hauling material from the steam shovel to the dump, the trucks falling in line and taking their turn with a number of other trucks engaged in the same work. After the period of the original hiring had expired, its term was extended by mutual agreement for another period of thirty days. The appellant maintained an employee at the dump to direct the drivers of the trucks to the particular place on the dump for unloading, and to keep them from backing the trucks closer to the declivity than safety permitted.

At about seven o'clock in the evening of June 18, 1928, the driver of one of the trucks received a load of material from the steam shovel and proceeded to the dump. When he reached the dump, the attendant was not there. He proceeded, however, to place the truck in a position to dump its load. He backed the truck towards the declivity, stopped it, and was reaching for the lever used to put the hoisting gear in motion, when he felt the rear wheels of the truck

sink. He immediately jumped from the truck, and the truck itself rolled down the declivity and was demolished so completely as to destroy its value.

In this action, the respondent seeks to recover from the appellant the value of the truck. Its complaint is in form that commonly used in an action for conversion. The appellant answered, denying the conversion alleged, and pleading affirmatively its version of the contract of hire entered into between it and the respondent. It further alleged that the damage to the truck occurred while the truck was in the direct and immediate charge of the driver employed by the respondent, and solely through the fault and negligence of the driver of the truck. The affirmative matters in the answer, in so far as they differed from the respondent's version of the contract of hire, were put in issue by a reply, and the cause was tried by the court sitting without a jury. The trial resulted in a judgment in favor of the respondent for the value of the truck, which the court found to be $3,000.

From the facts as stated, it is at once apparent that the liability of the appellant depends upon the view taken of the disputed terms of the contract. If the contract was that the respondent undertook to perform a specific work to be pointed out to it by the appellant in its own way and in its own manner, subject to no direction or control in the way and manner of performance, then it is possible that the respondent must itself bear the loss caused by the destruction of the truck. But we cannot think that such was the contract.

As we read the record, the contract was a simple contract of hire, by the terms of which the respondent let its truck to the appellant to be used in the work in which the appellant was engaged, subject to its entire control and direction. The purpose for which the ap-

pellant desired the truck was talked over between the representatives of the parties at the time the contract was entered into, but we find nothing in this talk, even as related by the appellant's witnesses, which would justify the conclusion that the respondent undertook to perform a specific job of work, or undertook to perform such work as the appellant should point out to it in its own way without direction or control as to the manner of performance.

It would hardly seem that the contract could have been as the appellant contends it to be from the very nature of the work the appellant was engaged in performing. As we have said, the appellant was engaged in the work of constructing a power plant. In this work, it used a steam shovel to excavate material from the site of the plant. The trucks of the respondent were used in connection with a number of others, owned and controlled by the appellant, to bear away the excavated material. Manifestly, it would seem that, if there was here room for the exercise of an independent contract, such a contract would be highly inconvenient and undesirable; that the very nature of the work would require that the instrumentalities used in it should be under the control of one common head if it was to be prosecuted successfully. While this consideration is not controlling, it, to our minds, weighs heavily in support of the respondent's version of the contract.

It is not a controlling circumstance that the respondent reserved the right to employ the drivers for the trucks. It is well settled that one who is the general servant of another may be lent or hired by his master to another for some special service, so as to become as to that service the servant of the hirer. The test is whether, in the particular service he is engaged to perform, he continues liable to the direction

and control of the master, or becomes subject to that of the party to whom he is let or hired. *Wiest v. Coal Creek R. Co.*, 42 Wash. 176, 84 Pac. 725; *Christiansen v. McLellan*, 74 Wash. 318, 133 Pac. 434; *Olsen v. Veness*, 105 Wash. 599, 178 Pac. 822; *Locomotive Exchange v. Rucker Brothers*, 106 Wash. 278, 179 Pac. 859.

In the case before us, the truck was as much under the direction and control of the appellant while operating on the work as it would have been had the appellant been privileged to employ its own driver. The circumstance, therefore, has no determinative force in the construction of the contract of hire. As supporting a contrary conclusion, the appellant cites a number of cases, among which are the following from this court: *Boe v. Hodgson Graham Co.*, 103 Wash. 669, 175 Pac. 310; *Macale v. Lynch*, 110 Wash. 444, 188 Pac. 517; *Machenheimer v. Department of Labor and Industries*, 124 Wash. 259, 214 Pac. 17, and *Burchett v. Department of Labor and Industries*, 146 Wash. 85, 261 Pac. 802, 263 Pac. 746. These cases we shall not review at length. They do not differ in principle from the cases we have first cited. Indeed, most of them expressly acknowledge the rule therein stated, and are differentiated by their facts.

Since we conclude that the driver of the truck was the servant of the appellant and not the servant of the respondent during the period the truck was actually used in the prosecution of the work, it follows, under the authority of the case of *Locomotive Exchange v. Rucker Bros., supra,* that the appellant is liable for the loss of the truck, even though it was lost because of the negligence of the driver. The appellant, however, combats the principle of that case, and also argues that it is distinguishable in its facts from the present case. But whether there is merit in these con-

tentions, we find it unnecessary to inquire. The trial court specifically found that the driver of the truck was not negligent, and our examination of the evidence convinces us that the finding is justified.

It is also contended that the accident was caused because of the defective brakes with which the truck was equipped. The trial court found against this contention also, and we think the finding justified. We think, furthermore, that it could well have found, even had it found that the brakes were defective, that the defect had no part in the cause of the accident.

The trial court allowed the respondent to recover interest at the legal rate from the date of the loss of the truck. This is complained of as error by the appellant, while the respondent contends that, since the action is one in conversion, interest begins to run from the date of the conversion, which, in this instance, is the date of the destruction of the truck. Our cases on the question as to the time interest begins to run on a claim for property wrongfully converted or destroyed by another, wherein we have allowed interest from the date of the conversion or destruction, and wherein we have allowed interest only from the date of the judgment, may not be in all instances easily differentiated. But an examination of them will show that they fall within one of two general principles.

If the value of the property is not in dispute, or its value can be determined by mere computation, or by reference to some reasonably certain standard, interest is allowed from the date of the conversion. If, on the other hand, there is a dispute as to the value, and the value cannot be ascertained by mere computation or by reference to some reasonably certain standard, but must be ascertained by opinion evidence as to value, the damages are unliquidated and interest

will be allowed on the recovery only from the date of the judgment. Whether some different or more certain rule could have been adopted, which would be more certain and work equal justice, we shall not stop to inquire. The distinctions made run back to early statehood, and confusion would follow a change. In our opinion, the present case falls within the second of the principles stated, and the recovery allowed is error.

The judgment will be remanded for correction in the particular last mentioned. Otherwise, it will stand affirmed.

MITCHELL, C. J., MAIN, FRENCH, and HOLCOMB, JJ., concur.