[No. 32004.   Department Two.   November 29, 1952.]

THE STATE OF WASHINGTON, *Respondent*, v. HENRY B. SCHOCK, *Appellant*.[1]

[1]Reported in 250 P. (2d) 516.

*Walter V. Swanson* and *Douglas A. Wilson,* for appellant.
*Ronald R. Hull* and *Perry J. Robinson,* for respondent.

HAMLEY, J.—Henry B. Schock was tried for the crime of taking indecent liberties with a minor female. He was convicted, and judgment was entered accordingly. On this appeal, all of Schock's assignments of error revolve around the receipt in evidence of certain feed store sale slips. They were introduced by the prosecution to rebut the defense of alibi. Appellant argues that the slips were irrelevant and prejudicial; that the prosecuting attorney was guilty of misconduct in connection with the introduction of these exhibits; and that, without the sales slips, the evidence does not support the verdict of the jury.

The crime was committed at about three o'clock p. m., April 24, 1951, on a country road in West Wapato, Yakima county. Appellant, who operates trucking and box strapping businesses, maintains his office approximately twelve miles from the scene of the crime. Much of his testimony was devoted to the tracing of his movements and whereabouts between 2:30 and 3:30 p. m. on the day the crime was committed. Among other things, he testified that at 2:30 p. m. he arrived at the Fairview Feed Store in Yakima and bought two sacks of mash; that he next went to his ranch and fed the chickens; and that he then went to his office, arriving there about three p. m. The testimony of several witnesses, if believed by the jury, tended to support this alibi.

In an effort to rebut Schock's testimony, the state first called Norma Alexander, a clerk at Fairview Feed Store. She testified that Schock was in the store on April 24, 1951. A sales slip of that date, made out to Schock and showing the purchase of mash, was then identified. It is a printed slip with two holes at the top end, and serial number A05611

in red printed at the bottom. The witness testified that she made out the slip. Counsel for appellant then interjected this statement: "We have been informed at your place there is no way we can tell the time of day—[interrupting colloquy]—of these slips." The witness replied: "No, you can't." This sales slip was then introduced, without objection, as exhibit No. 5.

Miss Alexander then testified that Schock and his attorney had called upon her two days after the arrest, and had tried to get her to establish the time of day, on April 24, 1951, when Schock was in the feed store. The witness next identified a sales slip, similar to exhibit No. 5, but with serial number A05615, which had been made out to B. Wayneberg, on April 24, 1951. Miss Alexander also made out this slip, and it was her recollection that the Wayneberg transaction took place in the morning.

The witness testified that sales slips issued by the store are numbered serially. There was then identified a pack of thirty-two similar sales slips, with serial numbers ranging from A05601 to A05637, all dated April 24, 1951. Miss Alexander testified that she made out some, but not all, of these sales slips. In answer to questions then interjected by counsel for appellant, she testified that there is another clerk at the feed store and that there are two machines for making out the sales slips. The Wayneberg sales slip and the pack of sales slips were then offered as exhibits Nos. 6 and 7. Counsel for appellant objected on the following ground: "It is incompetent, irrelevant and has no possible bearing on this question. They do not show the time of day."

After some colloquy between the judge and the prosecuting attorney, these two exhibits were received. The state then called Bruce Wayneberg, who testified that he made his purchase at the feed store on April 24, 1951, during the noon hour or shortly thereafter.

Calling attention to Norma Alexander's testimony that there was no way one could tell the time of day the sales slips were issued, appellant argues that exhibits Nos. 6 and

7 were therefore irrelevant and that his objection on that ground should have been sustained.

Bearing in mind that Norma Alexander so testified before any reference was made to the Wayneberg transaction, it is obvious that she meant to say only that the serial numbers on the slips would not, of themselves, be sufficient to establish the time of day of their issuance. The witness was never asked specifically whether or not the time of day one sales slip was issued could be established with reference to the proven time of day at which a higher numbered slip was issued. Yet her testimony that the slips were issued serially, that the Shock slip carried a lower number than the Wayneberg slip, that she issued both the Shock and Wayneberg slips, and that she issued the Wayneberg slip in the morning, revealed circumstances on the basis of which the jury could have found that the Schock slip was also issued in the morning. Her testimony was confirmed by the serial numbers and writing appearing on the slips, and by the testimony of Wayneberg.

The only possible weakness that we can perceive in this line of proof arises from the fact that Miss Alexander testified that there were two machines on which such slips could be issued, and that she did not testify that the Shock and Wayneberg slips were issued on the same machine. Appellant, however, made no objection on the ground that a proper foundation had not been laid. He made no objection that the sales slips and the testimony of Miss Alexander and Wayneberg, considered together, did not give rise to an inference that Shock had made his purchase in the morning. Nor did he make any attempt to establish that the sales slips had been issued on different machines. In any event, the fact that Miss Alexander issued both slips and that they were only four numbers apart, justified the jury in finding, in the absence of evidence to the contrary, that these slips had been issued on the same machine, and that the Shock slip had therefore been issued before the Wayneberg slip.

■■ All testimony is relevant which gives rise to reasonable inferences regarding, or throws any light upon, the

contested matter. *Keisel v. Bredick,* 192 Wash. 665, 74 P. (2d) 473. In our view, exhibits Nos. 6 and 7, when considered in connection with the other testimony referred to, give rise to a logical inference that Shock visited the feed store in the morning of April 24, 1951, or at noon, and not at 2:30 p. m., as he had testified. They are therefore relevant and were properly admitted.

While Miss Alexander was on the witness stand, counsel for the state offered exhibits Nos. 6 and 7 in evidence, stating to the court, in part:

"I show you Plaintiff's Exhibit #5, which is AO5611. That is Mr. Shock's sales slip, dated April 24th. A5615 is a sale to Mr. Wayneberg the same day, made by the same girl, and she has stated that this was made in the morning, *after Mr. Shock's sale was made,* and I offer this in evidence again." (Italics ours.)

Appellant points out that Miss Alexander had not testified that the Wayneberg slip was issued "after Mr. Shock's sale was made." Appellant argues that this was misconduct of counsel and was prejudicial in that it necessarily implanted in the minds of the jury a false impression of the relevancy and probative value of these exhibits.

It is doubtful if this misstatement could be considered as prejudicial, in view of the opinion expressed above that these exhibits, considered in the light of the other testimony, had probative value and were relevant. Appellant makes no contention that the misstatement was intentional. In any event, appellant took no notice of the incident at the time. He neither objected to the statement when it was made, nor moved that it be stricken and the jury be instructed to disregard it. Therefore, he may not now claim error because of this asserted misconduct of counsel. *Schirmer v. Nethercutt,* 157 Wash. 172, 288 Pac. 265; *Seth v. Department of Labor & Industries,* 21 Wn. (2d) 691, 152 P. (2d) 976.

Finally, appellant argues that, absent exhibits Nos. 6 and 7, the verdict is against the weight of the evidence. Our ruling, indicated above, that these exhibits were properly received in evidence, makes this a moot question. It is

proper to say, however, that our examination of the record convinces us that the verdict is not contrary to the weight of the evidence.

The judgment is affirmed.

SCHWELLENBACH, C. J., HILL, FINLEY, and OLSON, JJ., concur.

January 23, 1953. Petition for rehearing denied.

