[No. 736-1.    Division One—Panel 2.    December 27, 1971.]

WING OTT LEW, *Respondent and Cross-appellant,* v. GOOD-FELLOW CHRYSLER-PLYMOUTH, INC., *Appellant,* ELITE INSURANCE COMPANY *et al., Respondents.*

*Skeel, McKelvy, Henke, Evenson & Betts* and *Paul D. Carey,* for appellant.

*Vaughn E. Evans,* for respondent and cross-appellant.

*Davis, Wright, Todd, Riese & Jones* and *Rand F. Jack,* for respondent Seattle-First National Bank.

*Lane, Powell, Moss & Miller* and *Richard F. Allen,* for respondent Elite Insurance Company.

*Clarke, Clarke, Albertson & Bovingdon* and *George G. Bovingdon,* for respondents Allstate Insurance Company et al.

FARRIS, A.C.J.—Wing Ott Lew, a minor, purchased an automobile from Goodfellow Chrysler-Plymouth, Inc., on June 7, 1968. The purchase price was $3,659.27. On July 11, 1968, Mr. Lew returned the automobile to Goodfellow for repairs, leaving it in the Goodfellow service garage. After the repair work had been performed, Lew's car was parked in a lot adjoining the service garage by a Goodfellow employee, who placed the keys behind the car's sun visor. Lew called for it on July 12, 1968, as agreed, and paid the $13.06 repair charge. When the attendant went for the car, he discovered that it apparently had been stolen. Goodfellow advised Lew to notify the Seattle Police Department. Lew was also advised by Goodfellow that a written report of the theft would have to be submitted by him since he was the owner of the car. Lew maintained the position that Goodfellow had the responsibility to inform the police, until July 25, 1968, when he filed a written report with the Seattle police.

On December 9, 1968, the automobile was recovered by

the Kent police and Mr. Lew was so advised. He failed to notify Goodfellow of the recovery until February 10, 1969, whereupon he was offered $340 for storage and towing lien charges and $150 for loss of use of his car, and advised to reclaim it. When neither he nor Goodfellow reclaimed the car, which was damaged in the theft, Seattle-First National Bank, which had financed the car, recovered it in a replevin action. Seattle-First then sold it, following entry of a court order permitting sale, to Goodfellow for the $1,700 that it cost the bank to purchase it.

Seattle-First sought to recover the deficiency from Mr. Lew who then initiated action against the following parties: Seattle-First National Bank as financer of the car; Goodfellow Chrysler-Plymouth, Inc., as bailee; Elite Insurance Company, Lew's insurer which had refused to pay an insurance claim; Van Thai Tran, co-signer for Lew and listed by Goodfellow as sole owner of the car on the contract of sale; and Allstate Insurance Company, which was Mr. Tran's insurer and as such alleged by Elite to be the primary insurer of the automobile.

Goodfellow appeals from a judgment in the sum of $3,057.44 together with the taxable cost of plaintiff and Seattle-First National Bank on the theory that there was no showing of negligence and, in any event, that Mr. Lew had an obligation to mitigate the damages and failed to do so. Mr. Lew cross-appeals alleging as error the failure of the trial court to award interest from the date of the theft and reimbursement of the insurance premiums paid to Elite. Lew also contends that the trial court erred (1) in awarding a deficiency judgment to Seattle-First National Bank, because the bank elected to repossess the automobile, thereby waiving any claim for a deficiency, and (2) in refusing to consider the question of usury in the Seattle-First National Bank contract of sale.

■ Whether Goodfellow as bailee was negligent is a question of fact decided adversely to Goodfellow by the trial court based upon substantial evidence. It will not be

disturbed on appeal. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959).

■ It is also alleged that Mr. Lew had a duty to mitigate damages which he failed to discharge. An injured party must, whenever possible, attempt to mitigate his damages. The general rule is that "the plaintiff cannot be compensated for damages which he might have prevented by reasonable efforts and expenditures." *Hoff v. Lester,* 25 Wn.2d 86, 94, 168 P.2d 409, 164 A.L.R. 751 (1946). In *Ward v. Painters' Local 300,* 45 Wn.2d 533, 542, 276 P.2d 576 (1954), the court stated:

> "Where one person has committed a tort, breach of contract, or other legal wrong against another, it is incumbent upon the latter to use such means as are reasonable under the circumstances to avoid or minimize the damages. The person wronged cannot recover for any item of damage which could thus have been avoided." McCormick on Damages 127, § 33; Accord, *Hoff v. Lester,* 25 Wn. (2d) 86, 168 P. (2d) 409, 164 A. L. R. 751.

The record reflects that Mr. Lew did not notify the police of the theft until July 25, 1968, although he was advised by Goodfellow to do so on July 12, 1968. The record does not support an allegation that this failure increased the loss to Goodfellow. One can speculate that earlier notice would have meant earlier recovery. Goodfellow made a report to the police immediately upon discovery of the loss but it is alleged that this report was not "accepted" by the police. The trial court was not required to speculate on the effect of the delay by Lew in giving notice in the absence of some evidence which would support an inference of harm to Goodfellow.

To determine whether the failure to advise Goodfellow immediately of the recovery of the vehicle increased its damages here, the trial court could properly consider what Goodfellow did upon learning in mid-February 1969 that plaintiff's damaged and undriveable automobile had been recovered and placed in storage in Kent, Washington. Goodfellow took no action until, by letter dated April 25, 1969, Goodfellow joined with Elite and Allstate insurance

companies in offering Lew $340 to cover storage costs, $150 for loss of use, and the return of his car. As the trial court stated:

> [T]he obligation of the plaintiff to mitigate damages under the circumstances of this case was not superior to the obligation of Goodfellow Chrysler Plymouth to mitigate damages. Therefore, this question makes no difference in the amount of the recovery allowed the plaintiff in this case.

■ Mr. Lew, in his cross-appeal, raises four assignments of error. We find that the trial court properly refused to award interest on the judgment to Lew from the date of the theft. The damages were unliquidated, and the precise amount of the total sum due plaintiff was not determined until the entry of the trial court's judgment. Interest began to run from the date of the judgment. *See B. & B. Bldg. Material Co. v. Winston Bros. Co.*, 158 Wash. 130, 290 P. 839 (1930); *Beedle v. General Inv. Co.*, 2 Wn. App. 594, 469 P.2d 233 (1970).[1]

There was no theory argued to the trial court that would enable it to award to Lew the insurance premiums that he paid to Elite. Elite based its refusal to pay the insurance claim upon the apparent state of title to the vehicle.

Lew's third assignment of error is to the trial court's award of a deficiency judgment to Seattle-First National Bank in the amount of $1,735.11 after the sheriff's sale failed to yield the full amount owed by Lew to the bank under the conditional sales contract. Lew argues that this was error because the bank made an election to repossess the automobile and that Washington law does not permit a secured party under a conditional sales contract to repos-

---

[1]Plaintiff's reliance upon *Mall Tool Co. v. Far West Equip. Co.*, 45 Wn.2d 158, 273 P.2d 652 (1954), is not well-founded since the claim in that case was for an amount due upon a specific contract for the payment of money. The court did not deem it necessary to characterize the claim as liquidated in order to award interest since the amount due was "*determinable by computation with reference to a fixed standard contained in the contract, without reliance upon opinion or discretion.*" *Mall Tool Co.*, 45 Wn.2d at 176. The claim here was not ascertainable by such a computation.

sess and at the same time collect a deficiency judgment on consumer goods.

The trial court found as a fact that the Seattle-First National Bank was acting reasonably at all times to mitigate damages and to protect its security interest, and at no time did the bank elect to repossess the automobile. The trial court further found that the bank did not proceed under RCW 62A.9-504 or 62A.9-505, which action would have barred a deficiency judgment. *See* RCW 62A.9-501(1). These findings of the trial court are supported by substantial evidence and will not be disturbed on appeal. *Thorndike v. Hesperian Orchards, Inc., supra.*

■ Specifically, the bank pursued its remedy under RCW 62A.9-501, which provides that a secured party "may reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure." A secured party may judicially foreclose his security interest under RCW 62A.9-501(1) and also obtain a deficiency judgment. *See* 8 W. Shattuck & R. Cosway, Wash. Prac., art. 9, comment 9:1270(5) (1967):

> The end-result of U.C.C. sec. 9-501 as enacted in Washington is this: if in a purchase-money transaction the secured party chooses to repossess consumer goods and to sell them pursuant to U.C.C. sec. 9-504 he cannot collect a deficiency from the debtor although he will be obliged to account for a surplus; if the secured party chooses to repossess consumer goods and to take them in lieu of the obligation, as is permitted by U.C.C. sec. 9-505(2) in certain situations, he cannot collect a deficiency from the debtor; if the secured party chooses to foreclose his security interest in consumer goods by Superior Court action he can combine with or follow that remedy by an action *in personam* on the obligation and can thereby collect a deficiency; . . .

The trial court did not err in awarding the deficiency judgment to the bank.

■ Lew's final assignment of error alleges that the trial court should have permitted evidence and argument on the question of usury in the conditional sales contract and should have found that the contract was usurious. The

contract shows that the effective interest rate charged is approximately 11.6 per cent which is within the 12 per cent allowed by RCW 19.52.020. We reject Lew's contention that late charges should be added to the interest in computing the actual rate of interest to determine whether the interest rate is usurious. The general rule is that:

> [A] provision in a note for the payment of money by which the debtor agrees to pay, after maturity, interest at a higher rate than that which is permitted by law, is not sufficient to render the note usurious, provided the parties concerned act in good faith and do not intend to evade the usury law. *Blake v. Yount,* 42 Wash. 101, 84 P. 625 (1906); 45 Am. Jur. 2d *Interest and Usury* § 182, 144.

*Union Bank v. Kruger,* 1 Wn. App. 622, 626, 463 P.2d 273 (1969). Here there is no evidence that the parties intended to evade the usury law or that they acted other than in good faith when the contract was executed.

▮ Here the payment of late charges is solely within the borrower's control. When the contingency upon which the interest rate in excess of the statutory maximum comes into existence, is solely within the borrower's control and not the lender's, the transaction is not usurious. *Union Bank v. Kruger, supra. See also* 91 C.J.S. *Usury* § 31a, c, e(2) (1955).

The judgment is affirmed.

JAMES and SWANSON, JJ., concur.