[No. 1317-2. Division Two. July 31, 1975.]

RAYMOND KUBISTA, ET AL, *Appellants*, v. PAUL ROMAINE, ET AL, *Respondents*.

PEARSON, J., dissents by separate opinion.

*John R. Rorem*, for appellants.

*F. Ross Burgess*, for respondents.

ARMSTRONG, C.J.—Plaintiff Raymond Kubista appeals from a judgment awarding him $25,000 as compensation for an injury to his lower back which the jury found was proximately caused by the negligence of defendant Paul Romaine. The primary contention advanced by the plaintiff in this appeal is that the sum awarded by the jury was inadequate because of the erroneous ruling of the trial court excluding, as irrelevant, proffered evidence to the effect that prior to this litigation, the plaintiff relied upon an adjuster for the negligent defendant's insurance carrier who encouraged the plaintiff to go to school to learn a new trade, and advised the plaintiff that if he did so the insurance company would "take care of him." We hold that the trial court erred by excluding the proffered evidence because in this case the evidence was relevant to plaintiff's request for damages in the amount of wages he lost while attending school prior to trial.

On June 22, 1970, plaintiff Raymond Kubista was involved in a minor traffic accident as a result of the negligence of defendant Paul Romaine. At the time of the accident plaintiff sustained an injury to his back which did not appear to be serious, and he continued to satisfactorily work at his job as a shipfitter or boatbuilder. However, almost a year to the day after the original accident, plaintiff bent over to remove a rock while mowing his lawn and could not straighten up. A period of rather extensive medi-

cal treatment followed, including the performance of a spinal fusion in the lower lumbar area. A second operation was also necessary to remove painful scar tissue at the donor site on plaintiff's hip.

During the course of the medical treatment, plaintiff was advised by his doctor that he would no longer be able to perform his job as a shipfitter, and that he would have to change his occupation. As a consequence, plaintiff considered either trying to find some lesser-paying work which he could physically perform, or going to school to learn a new trade. It was at this time, plaintiff alleges, that an adjuster for defendant's insurance company advised plaintiff that if he did attend school the insurance company would take care of him.

It is undisputed that after his recuperation from the surgery performed on his back, plaintiff did begin attending school, and continued in school until the time of trial. It further appears that during this period, until March of 1973, the insurance company regularly paid plaintiff the amount of his monthly take-home pay as a shipfitter, and paid plaintiff's tuition at school for the first quarter, until this tuition was paid by the State as part of a vocational rehabilitation program.

All such payments ceased in March of 1973, after plaintiff sought the assistance of counsel and rejected a settlement offer from the insurance company. Plaintiff filed suit in April of 1973, was granted a motion for summary judgment on the issue of liability in October of 1973, and trial on the issue of damages commenced December 5, 1973.

At the time of trial the court heard defendant's motion in limine to exclude testimony of Howard Bollerud, the insurance adjuster who allegedly encouraged the plaintiff to attend school. The defendant, understandably, did not wish the fact of insurance coverage to be injected into the proceedings. The trial court ruled, in essence, that the testimony was not relevant, and that the subject of insurance should not be mentioned in voir dire, in plaintiff's opening statement, or in any of the plaintiff's direct testimony. The

court further stated, however, that the ruling was not final, and if the defendant's case at any time raised an issue upon which the adjuster's testimony might be relevant, the court would make another determination.

Trial on the issue of damages then proceeded, with some of the defense testimony presented out of order for the convenience of the witnesses. A point in the proceedings was eventually reached where the plaintiff believed that the testimony of the insurance adjuster was required, and the following offer of proof was presented to the court outside the presence of the jury:

> MR. ROREM: [plaintiff's attorney] Well, the basic question, Your Honor, I think the gist of the defense and what they've been trying to do is to try to show that he could have gone back to work. I intend to ask him why he went to school and he will testify and the answer is going to be that Howard Bollerud told him or encouraged him to go to school and that they were going to take care of him. And it is the thing which I figured was going to show up, I didn't see how we were going to avoid it, but their point still is that there hasn't been anything in lost wages, their attack is that he could have gone to work, nothing wrong doing some sort of job and my point is that what he did was done at their encouragement and they should not be able to now come back in and say or insinuate that he was trying to get something for nothing, that is what they are trying to do, but what he did was on their advice and it raises a very touchy situation and I think that that is the problem that exists . . .

Following the offer of proof and brief argument from counsel as to its admissibility, the trial court again ruled that the testimony of the adjuster was irrelevant and would not be admitted. This ruling is plaintiff's primary assignment of error on appeal.

■ Contrary to the suggestion of defendant that the above offer of proof was insufficient to support plaintiff's assignment of error on appeal, it does appear that the offer: (1) made it clear to the trial court what it was that plaintiff offered in proof; (2) contained the reason why plaintiff deemed the offer relevant and admissible over the objection

of defendant; and (3) enabled the trial court to make an informed ruling. The offer of proof was therefore adequate. *See Blood v. Allied Stores Corp.*, 62 Wn.2d 187, 193, 381 P.2d 742 (1963); CR 43(c); 5 R. Meisenholder, Wash. Prac. § 321, at 292 (1965). The issue thus squarely raised is whether testimony that an agent of the negligent defendant's insurance carrier assured the injured plaintiff that if he attended school the carrier would "take care of him" is relevant or sheds any light on the issue of plaintiff's damages in this tort action.

At this point it bears repeating that the trial court had previously ruled by summary judgment that the defendant was liable, as a matter of law, for any injury the plaintiff may have suffered which was proximately caused by the automobile accident in question. The issue of liability was completely removed from the case. The only matter submitted to the jury, then, was to determine the amount of plaintiff's injury proximately caused by defendant's negligence, and the amount of damages plaintiff should be entitled to recover as compensation. There apparently was little dispute at trial, and no argument has been presented on appeal, regarding the amount of compensation for such damage elements as pain and suffering and necessary medical care. The seriously contested issue was and is the amount which would reasonably and fairly compensate the plaintiff for any economic loss caused by a decrease in earnings.

 It is generally well recognized that there are normally two components or aspects which should be considered in attempting to measure the detriment an injured plaintiff has sustained when by reason of the injury he is unable to continue earning his prior wages. The first and most obvious component is frequently called "lost time," "lost wages," or "lost earnings." That is, it is clear that if an injury renders a plaintiff temporarily unable to continue at a prior occupation for a given period, the plaintiff should be entitled to compensation for regular wages lost because of the disability. Secondly, when it becomes apparent that

an injury was such that it occasioned a permanent disability, or permanent diminution of the ability to earn money, then the plaintiff should be entitled to compensation for what is generally called "impaired earning capacity." *See Murray v. Mossman*, 52 Wn.2d 885, 329 P.2d 1089 (1958); *Leak v. United States Rubber Co.*, 9 Wn. App. 98, 102, 511 P.2d 88 (1973); *Bartlett v. Hantover*, 9 Wn. App. 614, 619, 513 P.2d 844 (1973), *aff'd in part, rev'd in part*, 84 Wn.2d 426, 526 P.2d 1217 (1974); 22 Am. Jur. 2d *Damages* §§ 89-101 (1965); 18 A.L.R.3d 88 (1968).

In this case it is undisputed that following plaintiff's recuperation from the surgery performed on his back, he had the choice of going back to work at a new and different occupation commensurate in duties and wages with his alleged permanent disability. If he had done so, it is clear that he would have been entitled to damages measured not only by the amount of his lost wages during the period of his hospitalization and recuperation, but also measured by the impaired earning capacity resulting from any proven permanent diminution of his ability to earn money during the remainder of his working life. However, plaintiff was presented with a second choice—that of attending school as part of a vocational rehabilitation program to learn a new trade which he could successfully perform despite his disability, and presumptively at a rate of pay which might reduce the amount of his impaired earning capacity. Plaintiff chose this second alternative, in part, he alleges, because of the encouragement of defendant's insurance carrier.

It has long been the law in this state and elsewhere that an injured party must, whenever possible, attempt to mitigate his damages, and cannot be compensated for damages which he might have prevented by reasonable efforts and expenditures. *Snowflake Laundry Co. v. MacDowell*, 52 Wn.2d 662, 674, 328 P.2d 684 (1958); *Ward v. Painters' Local 300*, 45 Wn.2d 533, 276 P.2d 576 (1954); *Wing Ott Lew v. Goodfellow Chrysler-Plymouth, Inc.*, 6 Wn. App.

226, 492 P.2d 258 (1971). The obvious corollary to this rule is that an injured party is generally entitled to all legitimate and reasonable expenses necessarily incurred by him in an honest and good faith effort to reduce the damages from or following the wrongful act. *Snowflake Laundry Co. v. MacDowell, supra*; 25 C.J.S. *Damages* § 49, at 775 (1966). Although prudent action and ordinary diligence is of course required, the following statement of the applicable principles of law has been approved by the Supreme Court:

> "While it is economically desirable that personal injuries and business losses be avoided or minimized as far as possible by persons against whom wrongs have been committed, yet we must not in the application of the present doctrine lose sight of the fact that it is always a conceded wrongdoer who seeks its protection. Obviously, there must be strict limits to the doctrine. A wide latitude of discretion must be allowed to the person who by another's wrong has been forced into a predicament where he is faced with a probability of injury or loss. Only the conduct of a reasonable man is required of him. *If a choice of two reasonable courses presents itself, the person whose wrong forced the choice cannot complain that one rather than the other is chosen.*"

*Hogland v. Klein*, 49 Wn.2d 216, 221, 298 P.2d 1099 (1956), citing C. McCormick, *Law of Damages* § 35, at 133 (1935).

It became apparent during the trial of the instant case that the plaintiff was requesting as an element of damages the amount of his lost wages during the entire period prior to trial when he was attending school, and that the thrust of the defense to this request was the argument approved by the court in *Ward v. Painters' Local 300, supra*; *i.e.*, that the plaintiff was not entitled to such lost wages because he could have and should have attempted to work. An issue was certainly raised, therefore, regarding the reasons for and the reasonableness of plaintiff's decision to forego employment and attempt to complete a vocational rehabilitation program. Since only the conduct of a reasonable man was required of him, the plaintiff was entitled to have the jury evaluate the reasonableness of his conduct in the light

of any available evidence relevant to that specific issue. The fact that a representative of the negligent defendant's insurance company advised and encouraged the plaintiff to attend school and learn a new trade certainly "sheds light" on the question of the reasonableness of plaintiff's conduct. Although determination of the relevancy of evidence is a matter where the trial court must necessarily exercise its discretion, the proffered evidence in this case was relevant, and it was error to exclude it. *Ladley v. St. Paul Fire & Marine Ins. Co.*, 73 Wn.2d 928, 442 P.2d 983 (1968).

In ruling that evidence of this conduct of the insurance carrier should have been introduced in the case, the court is not unmindful of the authorities cited in defendant's appellate brief which hold that evidence of settlement negotiations or offers of compromise is not admissible as an admission of liability absent the narrow exception applicable to relevant admissions of distinct facts contained therein. *See, e.g., Eagle Ins. Co. v. Albright*, 3 Wn. App. 256, 474 P.2d 920 (1970); *Ershig Sheet Metal, Inc. v. General Ins. Co. of America*, 62 Wn.2d 402, 383 P.2d 291 (1963). There is further authority from other jurisdictions holding that the fact of advance payment by an insurance company, similar to the payments involved here, is not admissible as an admission of liability. *See* Annot., 20 A.L.R.2d 291 (1951); *Hughes v. Anchor Enterprises, Inc.*, 245 N.C. 131, 95 S.E.2d 577 (1956). However, as we mentioned previously, the issue of liability was not involved in this case, and the hazard attendant upon the introduction of insurance coverage in a questionable liability situation was not present. Moreover, the above rules are nothing more than a variation, designed not to discourage compromise and settlement, of the general rule that in personal injury cases, the fact that the defendant carries liability insurance is immaterial, and the deliberate intrusion into the case of this fact by plaintiff is positive, prejudicial error and grounds for reversal. *Kadiak Fisheries Co. v. Murphy Diesel Co.*, 70 Wn.2d 153, 160, 422 P.2d 496 (1967); *Mills v. Warn*, 8 Wn. App. 296, 298, 505

P.2d 1288 (1973); *Buob v. Feenaughty Mach. Co.*, 4 Wn.2d 276, 294, 103 P.2d 325 (1940). We make no new law when we restate, additionally, the caveat that this general exclusionary rule does not operate if the fact of insurance has specific relevancy to some issue in the case. *Carlson v. P.F. Collier & Son Corp.*, 190 Wash. 301, 320, 67 P.2d 842 (1937); *Jerdal v. Sinclair*, 54 Wn.2d 565, 569, 342 P.2d 585 (1959); *Mills v. Warn, supra*; 5 R. Meisenholder, Wash. Prac. § 8, at 38 (1965). Here the fact of insurance, as it related to the conduct of the negligent defendant's insurance carrier, did have specific relevance to the issue raised regarding the amount of lost wages plaintiff was entitled to as damages.

One final observation should be made. That is that our holding should in no way be construed to discourage or inhibit the development by the insurance industry in the past 10 years or so of what are frequently called "advance payment programs," such as was utilized in the case at bar. The apparent theory behind such programs is that the injured party benefits by the immediate payment of various out-of-pocket expenses incurred as a result of an accident, and the correlative benefit to the insurance company, aside from the doing of a humane thing for someone in distress, is the advantage to be gained by securing the good will and cooperation of the claimant, with the expectation of thereby controlling the claim to avoid litigation and to promote better and faster settlements. *See The Legal Aspects of Partial Payments Made on Liability Claims in Advance of Final Settlement*, ABA Section of Insurance, Negligence and Compensation Law 499 *et seq.* (1967). We point out that it is only when the extent of control exercised by the company becomes material to a contested issue, such as the narrow question of the amount of damages in this case, that the general rule excluding any mention of insurance must give way to the admissibility of directly relevant evidence.

The inherent prejudice involved in the contrary ruling of the trial court was aptly demonstrated in defendant's clos-

ing argument. Here the injured plaintiff had fully cooperated with a rather extensive involvement of the defendant's insurance carrier during several years of his attempted recuperation and rehabilitation. Yet when final settlement satisfactory to the insurance company was not reached, and trial proceeded without the proffered evidence of the carrier's involvement, the defense was able to argue to the jury as follows:

> I suggest to you, ladies and gentlemen, that Mr. Kubista, and that the evidence is clear, could have clearly been employed prior to this time if he had decided to be employed but instead he decided to go to school and he says that he is bettering himself in school. I don't believe that the defendant is responsible for that decision.

The evidence on this subject offered by the plaintiff should have been admitted, and because of the prejudicial effect of its absence, the plaintiff is entitled to a new trial.

We turn now to the remaining assignments of error. In regard to plaintiff's challenge to the admission of portions of an affidavit taken of the unavailable defendant without strict compliance with the notice provisions of CR 30(b)(1), we need only mention that plaintiff admits the deposition contained no significant or prejudicial evidence. If any error occurred it was certainly harmless. As to plaintiff's contention that the court erred by limiting redirect examination of one of plaintiff's treating physicians, we note that plaintiff does not even attempt to establish that the court abused its discretion, and we find no error. *State v. Baker*, 4 Wn. App. 121, 480 P.2d 778 (1971); *State v. Hinkley*, 52 Wn.2d 415, 325 P.2d 889 (1958).

Reversed and remanded.

PETRIE, J., concurs.

PEARSON, J. (dissenting)—I am impelled to dissent from the conclusion of the majority that exclusion of the offered evidence was reversible error. I base my dissent on three grounds: (1) the offer of proof was insufficient to apprise the court of the grounds for admissibility; (2) the offered

evidence does not demonstrate any logical relationship with the fact to be established, and consequently no relevancy is demonstrated; and (3) assuming arguendo some relevance in the offered evidence, the exclusion was not an abuse of discretion when weighed against established legal principles and policy considerations.

The first reason for my dissent is founded upon the fact that the offer of proof merely suggested that the proffered testimony was necessary to refute the defense assertion that plaintiff could have, from a medical standpoint, returned to work rather than attend school. This offer did not specifically assert relevancy or any other legal ground for its admissibility. The trial court was left to speculate as to whether plaintiff thought the evidence should be allowed (1) as an admission, (2) under principles of estoppel, or (3) as relevant to some specific fact in issue.

In *Tomlinson v. Bean*, 26 Wn.2d 354, 361, 173 P.2d 972 (1946), Judge William J. Steinert, speaking for a unanimous court, stated:

> The principle upon which we decide this case is that it is the duty of a party to make clear to the trial court what it is that he offers in proof, and the reason why he deems the offer admissible over the objections of his opponent, so that the court may make an informed ruling. If the party fails to so aid the trial court, then the appellate court will not make assumptions in favor of the rejected offer.

(Citations omitted.)

The trial court is not required to cast about for reasons for which the evidence was offered. *Tomlinson v. Bean, supra*. The majority mistakenly views the offer of proof as asserting a claim of relevancy. At best, however, the offer suggests a vague theory of equitable estoppel, as I shall discuss later; *i.e.*, since the adjuster encouraged plaintiff to undertake vocational rehabilitation is would be unfair to allow defendant to contest the need thereof. Because the trial court was required to speculate on the grounds for admissibility, the offer of proof was insufficient.

Secondly, I dissent because the proffered testimony does not tend to prove any material fact which was *in issue*. The traditional standard for relevancy is whether the evidence gives rise to reasonable inferences regarding contested matters or sheds any light upon them. *State v. Schock*, 41 Wn.2d 572, 250 P.2d 516 (1952); *State v. Whalon*, 1 Wn. App. 785, 464 P.2d 730 (1970). Relevancy means a logical relationship between evidence (offered) and the fact to be established. *Chase v. Beard*, 55 Wn.2d 58, 346 P.2d 315 (1959).

The majority erroneously assumes that the ultimate fact in issue was whether plaintiff acted reasonably in electing to go to vocational school, rather than return to work. The precise question, however, was whether the automobile accident proximately caused a disability which precluded plaintiff's return to his former work, so that vocational rehabilitation was reasonably necessary. *See* WPI 30.01,[1] 6 Wash. Prac., at 145, and 30.07, at 153 (1967). If so, then his wage loss would extend through the period of plaintiff's vocational rehabilitation and the reasonableness of this item of damages would be factually established. This is primarily a medical question.

Two prominent orthopedic specialists disagreed upon the nature and extent of plaintiff's disability stemming from the automobile accident. Plaintiff's physician, Dr. Robert Florence, who performed the back surgery and followed plaintiff through the recovery period, testified that he advised plaintiff not to return to his former specialties—shipfitter and boilermaker—with the risk of aggravating his back by heavy lifting and bending, and that he should seek vocational rehabilitation. Plaintiff followed this professional advice. Defendant's physician, Dr. David Millett, concluded that plaintiff's post-surgery recovery was suffi-

---

[1]WPI 30.01 provides, in part:

"If your verdict is for the plaintiff, then you must determine the amount of money which will reasonably and fairly compensate the plaintiff for such damages as you find were proximately caused by the negligence of the defendant."

cient to allow him to return to his former work, if he would lose weight.

On this state of the evidence, the jury was simply required to evaluate the conflicting testimony and decide whether plaintiff's disability stemming from the automobile accident required him to be retrained. Statements made by an insurance adjuster, who at most encouraged plaintiff to follow his own doctor's advice, could not shed any light on the medical necessity for plaintiff's action.

It is axiomatic that determinations of relevancy of evidence are matters within the sound discretion of the trial court, reviewable only for manifest abuse of discretion. *Ladley v. St. Paul Fire & Marine Ins. Co.*, 73 Wn.2d 928, 442 P.2d 983 (1968); *Stuart v. Consolidated Foods Corp.*, 6 Wn. App. 841, 496 P.2d 527 (1972).

Given the facts of this case, the remote relevancy, if any, of the evidence, and the inadequacy of the offer of proof, I fail to see that an abuse of discretion has occurred justifying a conclusion of prejudicial error.

But even assuming for the sake of argument some relevancy to the offered testimony, and that the trial court was adequately apprised of the grounds and was able to make an informed ruling, it is my opinion that under the existing law, which is supported by sound considerations of policy, the trial court's ruling was not an abuse of judicial discretion.

Relevancy aside, was the offered evidence admissible as either (1) an admission, or (2) under principles of equitable estoppel? The majority opinion is not specifically predicated upon either premise, but both have been urged by plaintiff on appeal as the grounds for admissibility, and both principles are pertinent, in my opinion, to a consideration of whether an abuse of judicial discretion has occurred.

The offer of proof did not advise the trial court of the context of the adjuster's statement, so that either of these grounds for admissibility could be evaluated. The pretrial

record does show that defendant's insurer was engaged in an "advance payment" plan whereby it had paid to plaintiff some $15,643.76 as wage loss, medical expenses of $5,131.82, and car repairs of $253.28. These payments were made voluntarily and continued until plaintiff engaged counsel and commenced this action. We are informed on appeal that the wages paid included the period of plaintiff's surgical and post-surgical recovery, as well as several months while he attended vocational school.

The offer of proof does not advise us precisely when the adjuster made the alleged statement to plaintiff that "they would take care of him," but it is evident that this statement occurred prior to the time plaintiff obtained counsel, and well before the defense exercised the right of an independent medical examination.

In this context, to ascertain whether the offered evidence would amount to either an admission against interest or give rise to some sort of equitable estoppel requires that we consider the legal aspects of advance payments as well as the equities of this case.

It has been said that advance payments offer the dual purpose of engendering good will of an injured claimant so that an out-of-court settlement may be reached, and also in assisting an injured claimant through the period of economic hardship which many accidents produce. *See Legal Aspects of Partial Payments Made on Liability Claims in Advance of Final Settlement*, ABA Section of Insurance, Negligence and Compensation Law 499 *et seq.* (1967).

Since one of the main purposes of advance payment programs is to arrive at settlements of potential litigation, it is evident that those programs should be considered a part of the settlement negotiations. They are not intended as admissions of liability for the payments made, but to encourage settlements without recourse to litigation—a policy long favored in the law. Yet, what are the consequences of allowing evidence of this sort to be brought before the jury?

It is manifest in the case at bench that if plaintiff's offer

of proof were allowed, the jury would be informed not only that defendant was insured but that the insurer supplied plaintiff with wages during a portion of the contested period, while he attended school. This evidence would have the effect of an admission against interest, putting defendant at a serious disadvantage in contending against its liability for medical and wage expenses which the independent medical examination revealed were unwarranted. It would be an understatement to say that advance payment programs would be substantially discouraged were such ruling to become the established law.

Up to the present, the policy of our law has discouraged the intentional interjection of the fact of insurance into a suit of this kind. *Kadiak Fisheries Co. v. Murphy Diesel Co.*, 70 Wn.2d 153, 422 P.2d 496 (1967). The trial court's ruling was in accord with this policy.

Also, for the policy reasons mentioned above, the law does not discourage settlements or offers of compromise by admitting evidence of such negotiations. *Eagle Ins. Co. v. Albright*, 3 Wn. App. 256, 474 P.2d 920 (1970); *Ershig Sheet Metal, Inc. v. General Ins. Co. of America*, 62 Wn.2d 402, 383 P.2d 291 (1963). The trial court's ruling was in accord with this policy.

Nor, for policy reasons, has the law generally permitted evidence of an offer or promise made on behalf of a defendant to pay the hospital and medical costs of the injured party as an admission of the defendant's liability for those costs. Annot., 20 A.L.R.2d 291 (1951). The trial court's ruling was in accord with this policy.

Yet these policy considerations and the predictable consequences of the ruling in the majority opinion are not, in my view, sufficiently considered. Because of the prejudicial impact which this type of evidence will have on the juries, courts should be reluctant to deviate from established rules of admissibility discussed above, when the relevancy peg is remote, as it is here. And above all, I am most reluctant to deprive the trial court of its well established discretion to

rule that this type of evidence would generate heat instead of diffusing light on the ultimate fact in issue.

Finally, a brief consideration of the equities should be made. The majority opinion speaks of the prejudicial nature of defense counsel's final argument that defendant should not be responsible for wages during the time plaintiff attended school. This statement was directly supported by the testimony of Dr. Millett. It seems obvious that any evidence which by its nature is detrimental to one party to a lawsuit is prejudicial. It is axiomatic that argument of prejudicial matters is proper where there is evidence to support it. Not only was the argument proper, but plaintiff made no objection to it. Consequently, reversible error may not be based upon the argument. *Bombardi v. Pochel's Appliance & TV Co.*, 9 Wn. App. 797, 515 P.2d 540 (1973).

Nor do I believe the argument was unfair in the context in which the adjuster's statement was made to plaintiff. Had the company refused to continue the wage payment in the face of Dr. Florence's recommendation, we might criticize the company for violating the spirit of its advance payment program. However, I fail to see why the insurer should be penalized with an adverse evidentiary ruling solely because, without the benefit of an independent medical examination, it accepted Dr. Florence's recommendation.

I would affirm.

Petition for rehearing denied September 9, 1975.

Appealed to Supreme Court September 10, 1975.