[No. 3284-1-III. Division Three. March 18, 1980.]

CITY NATIONAL BANK AND TRUST COMPANY, *Appellant,* v. PATRICIA A. PYLE, *Respondent.*

*Robert F. Patrick* and *Aitken, Schauble, Patrick & Neill,* for appellant.

*Claude Irwin, Jr.,* and *Irwin, Friel & Myklebust,* for respondent.

McINTURFF, J.—The plaintiff, City National Bank and Trust Company, appeals a summary judgment dismissal of its action to foreclose a security interest in an automobile owned by the defendant, Patricia Pyle.

The facts are not in dispute. On June 24, 1974, Jerry Pyle purchased a 1974 Volkswagen from Scovil Motors, Inc., in Norman, Oklahoma. In connection with the execution of a retail installment contract, Mr. Pyle granted Scovil Motors a security interest in the car to secure his payment of the deferred balance, $3,573.18, including interest, over the next 36 months. On July 11, Scovil Motors assigned the security agreement to the plaintiff, City National Bank and Trust Company.

In August 1975, Jerry Pyle and the defendant, Patricia Pyle, were divorced. Pursuant to a property settlement agreement, the divorce decree awarded Mrs. Pyle the 1974 Volkswagen "as her sole and separate property, free and clear of any claims, rights or interests whatsoever of the

defendant [Jerry Pyle]." Mrs. Pyle was aware of the outstanding security interest at the time of the divorce, but Mr. Pyle continued to make the payments on the unpaid balance following the divorce.

When Mrs. Pyle moved to the state of Washington, she applied for and obtained a new certificate of title which noted City National Bank and Trust Company's security interest in the car. The certificate of title was mailed to the bank in March 1976.

After becoming delinquent in the car payments, in May 1977, Mr. Pyle executed a new note with City National Bank and Trust Company to refinance the note of June 24, 1974. This note extended the payments for 24 months and increased the rate of interest to 13.79 percent.

Mr. Pyle died in July 1977. No further payments were made on the May 16 note which had an unpaid balance of $1,954.56, plus interest. City National Bank and Trust Company then initiated this action against Mrs. Pyle to foreclose its security interest in the automobile. Significantly, City National Bank does not seek to establish personal liability against Mrs. Pyle on the note.

Cross motions for summary judgment resulted in the dismissal of the bank's complaint. The court found Mrs. Pyle held the title to the car free and clear of any claim by City National Bank and Trust Company. The findings of fact and conclusions of law entered by the court were not necessary for the entry of a summary judgment;[1] however, the conclusions reveal the court's reasoning as follows:

CONCLUSIONS OF LAW
I.

Plaintiff [City National Bank and Trust Company] had a valid security interest in the 1974 Volkswagon [sic] upon assignment to it of the note and security interest dated June 24, 1974.

---

[1]State ex rel. Zempel v. Twitchell, 59 Wn.2d 419, 367 P.2d 985 (1962); Sinclair v. Betlach, 1 Wn. App. 1033, 467 P.2d 344 (1970).

II.

Plaintiff had or is charged with notice of the transfer of ownership rights in the Volkswagon [*sic*] to Patricia Pyle, the defendant herein, on or about March 19, 1976.

III.

When ownership of the Volkswagon [*sic*] was transferred to the defendant, her only relationship to the note and security interest in the car was to hold the car as security for the note. As such, the defendant was in the position of a *surety to the note* and should be declared a surety by operation of law.

IV.

The plaintiff's act of refinancing the note and extending time for payments without defendant's consent impaired the ownership rights of the defendant. That defendant, *as a surety to the note, was relieved of all obligation on the note and security agreement* when the plaintiff, with notice of defendant's rights, extended time for payments without the defendant's consent.

(Italics ours.) In view of the applicable provisions of the Uniform Commercial Code governing secured transactions, RCW 62A.9–101 *et seq.* (Article 9), we find the court erred in its disposition.

The agreement between Mr. Pyle and Scovil Motors is a secured transaction under Article 9. Scovil Motors retained a security interest in the car to secure Mr. Pyle's payment of the price. RCW 62A.9–102(1)(a) and RCW 62A.9–107(a).[2] A security interest is an interest in personal property which secures the payment or performance of an obligation, RCW 62A.1–201(37), and a "'[s]ecurity agreement'

---

[2]RCW 62A.9–102:

"(1) Except as otherwise provided in RCW 62A.9–103 on multiple state transactions and in RCW 62A.9–104 on excluded transactions, this Article applies so far as concerns any personal property and fixtures within the jurisdiction of this state

"(a) to any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures . . ."

RCW 62A.9–107:

"A security interest is a 'purchase money security interest' to the extent that it is

"(a) taken or retained by the seller of the collateral to secure all or part of its price . . ."

means an agreement which creates or provides for a security interest". RCW 62A.9–105(h).

The sole issue is whether the security interest in the car was released by the execution of another note with different terms. For its proper resolution, it is necessary to distinguish between the security interest and the debt or underlying obligation.

In general, the security agreement is effective between the parties and is likewise effective against third parties. RCW 62A.9–201 and official comment.[3] This principle is reiterated in RCW 62A.9–306(2):

> Except where this Article otherwise provides, *a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof by the debtor* unless his action was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.

(Italics ours.)

> "It is a general rule as regards personal property that title, like a stream, cannot rise higher than its source; and therefore it is a general principle that no one can transfer a better title than he has . . .

*Eatonville State Bank v. Marshall*, 170 Wash. 503, 505, 17 P.2d 14 (1932). RCW 62A.2–403(1) recognizes this common–law principle and provides:

> A purchaser of goods acquires all title which his transferor had or had power to transfer except that a *purchaser of a limited interest acquires rights only to the extent of the interest purchased.*

(Italics ours.) Under RCW 62A.1–201(32), a "[p]urchase" includes not only a taking by sale but *"any other voluntary transaction creating an interest in property."* (Italics ours.)

---

[3] RCW 62A.9–201:
"Except as otherwise provided by this Title a security agreement is effective according to its terms between the parties, against purchasers of the collateral and against creditors."

█ Here, Mrs. Pyle, pursuant to a property settlement agreement became the owner of a car subject to an outstanding security interest. Contrary to the conclusion of the trial court, Mrs. Pyle was not a personal surety on the note by operation of law—she had no part in the original transaction between Mr. Pyle and Scovil Motors, and there is no evidence she ever agreed to answer for her former husband's debt on the underlying obligation. Nor did she ever agree to pledge the car as a security for the debt—a situation commonly referred to as real suretyship.[4] Very simply, the car was encumbered by a security interest at the time she took possession, but she had no personal liability on the underlying obligation which gave rise to the security interest. *See* RCW 62A.9–112.[5] Under RCW 62A.9–306(2) there was a continuing security interest in the car notwithstanding the change in ownership.

█ Since this case involves neither a personal nor real suretyship situation, the agreement between Mr. Pyle and City National Bank and Trust Company to refinance the debt did not operate to release the car from the original

---

[4]A. Stearns, *Law of Suretyship* (Elder rev. 5th ed. 1951), explains the difference between personal and real suretyship in this way at section 1.3, pages 2 and 3:

"The engagement of a person to be answerable for the debt, default or miscarriage of another is called personal suretyship, in distinction from the relationship arising where property is pledged or mortgaged as a security for a debt, which is sometimes called real suretyship. By a legal fiction, the pledged or mortgaged property is considered to have promised to pay the debt if the debtor does not. Where such relationship is recognized, the principles governing personal suretyship are applied."

*See also Carter v. Curlew Creamery Co.*, 20 Wn.2d 275, 281, 147 P.2d 276, 151 A.L.R. 921 (1944); *Thompson v. Metropolitan Bldg. Co.*, 95 Wash. 546, 550, 164 P. 222 (1917).

[5]RCW 62A.9–112:

"Unless otherwise agreed, when a secured party knows that collateral is owned by a person who is not the debtor, the owner of the collateral is entitled to receive from the secured party any surplus under RCW 62A.9–502(2) or under RCW 62A.9–504(1), and is not liable for the debt or for any deficiency after resale, . . ."

security interest.[6] The refinancing agreement specifically provided: "This loan is secured by a security agreement dated 3/24/74 covering the following security: 1974 V.W." Since Mr. Pyle was no longer the owner of the car at the time he refinanced the debt, he could not subject the car to a greater encumbrance. Therefore, the bank's interest in the car is limited to the terms of the original indebtedness.

Upon Mr. Pyle's default on the loan, City National Bank and Trust Company had the right to pursue a remedy under RCW 62A.9–501(1).[7] Under this subsection, the secured party's cumulative rights enable it to "reduce his claim to judgment, foreclose, or otherwise enforce the security interest by any available judicial procedure." *See Foster v. Knutson,* 84 Wn.2d 538, 547, 527 P.2d 1108 (1974); *Peoples Nat'l Bank v. Peterson,* 7 Wn. App. 196, 198–99, 498 P.2d 884 (1972), *aff'd* 82 Wn.2d 822, 831, 514 P.2d 159 (1973); *Wing Ott Lew v. Goodfellow Chrysler–Plymouth, Inc.,* 6 Wn. App. 226, 231, 492 P.2d 258 (1971). Here, there is no attempt to hold Mrs. Pyle personally liable on the note. Instead, City National Bank and Trust Company chose to judicially foreclose upon the security. This it was entitled to do to the extent of the balance and terms of the original indebtedness.

Judgment of the Superior Court is reversed; the case is remanded to the Superior Court for a determination of the

---

[6]"The surety's contract, like any other contract, cannot be altered without the consent of the parties. The surety is entitled to stand upon the strict terms of his engagement and he can be bound in no other way. Any change in the terms of the principal contract which essentially varies that contract will discharge the surety from liability." A. Stearns, *Law of Suretyship* § 6.2, at 107 (Elder rev. 5th ed. 1951). As noted above, identical principles govern both personal and real suretyship relationships.

[7]RCW 62A.9–501(1):

"When a debtor is in default under a security agreement, a secured party has the rights and remedies provided in this Part and except as limited by subsection (3) those provided in the security agreement. He may reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure. . . . The rights and remedies referred to in this subsection are cumulative."

590

extent of City National Bank and Trust Company's interest in the car under the terms of the original financing agreement.

GREEN, C.J., and ROE, J., concur.