ON REHEARING EX MERO MOTU
On our ex mero motu reconsideration of this case, the original opinion is withdrawn and the following substituted therefor:
Brenda Williams and other named plaintiffs filed an action against E.F. Hutton Mortgage Corporation ("E.F. Hutton") on behalf of themselves and others similarly situated, alleging, among other claims, that real estate mortgage loans from First American Mortgage Company ("First American") to the plaintiffs included excessive, non-refundable, prepaid finance charges that are unconscionable and usurious under Alabama law. E.F. Hutton purchased the loans from First American, which has declared bankruptcy. The trial court granted E.F. Hutton's motion for summary judgment on all the counts of the complaint, and the plaintiffs appeal.
Although the plaintiffs' amended complaint contained five counts, on appeal the plaintiffs challenge the summary judgment only as to count two of the complaint. Accordingly, the plaintiffs have waived any claim of error as to those portions of the judgment not challenged on appeal. Nichols v. Town ofMount Vernon, 504 So.2d 732 (Ala. 1987); Ex parte Riley,464 So.2d 92 (Ala. 1985). The pertinent portions of count two of the amended complaint allege that
 "the aforementioned practices, including the imposition of non-refundable prepaid finance charges, are unconscionable, both as a matter of public policy under the common law of this state and under the provisions of the Alabama Code Section 8-8-5 and under the provisions of the Alabama Mini-code (Alabama Code Sections 5-19-1 et seq.)."
Among First American's practices mentioned in the complaint are that "each borrower would have 40% of the amount he/she received added back to the note as 'loan discounts.' "[1]
The trial court entered summary judgment for the defendant on count two, in the following portion of its order:
 "Count Two of the Amended Complaint, which alleges usury claims, § 8-8-1, et seq., Code, and unconscionability claims under the Mini-Code, § 5-19-16, Code, is dismissed because the usury statute has no applicability to the instant loans, each of which had an original principal balance of more than $2,000, and the unconscionability claims under the Mini-Code are barred by the applicable statute of limitations found at § 5-19-19, Code.
Furthermore, the unconscionability claims are dismissed because the specific unconscionability provision of the Mini-Code, § 5-19-16, has no application to loans that have previously been prepaid."
Two problems with the reasoning of this order are apparent. One regards the holding that "the usury statute has no applicability to the present loans," which holding ignores count two's claim of unconscionability under § 8-8-5, and the other regards the application of the statute of limitations for actions to recover excess finance *Page 160 
charges under § 5-19-19 to a claim of unconscionability under §5-19-16.
Alabama Code 1975, § 8-8-5(a), allows persons to agree to pay such a rate of interest as they may determine, provided that the original principal balance of the loan is not less than $2,000, and "provided further that all laws relating to unconscionability in consumer transactions including but not limited to the provisions of chapter 19 of Title 5, known as the Mini-Code, shall apply to transactions covered by this section." The quoted language clearly retains the application of unconscionability laws to loans of $2000 or more, even though § 8-8-5 exempts such loans from the application of "any law of this state otherwise prescribing or limiting [the] rate or rates of interest" paid on such loans. Thus, the trial court's holding that "the usury statute has no applicability to the instant loans" is correct only to the extent that no interest rate limitation is imposed by "any law of this state" on the plaintiffs' loans; to the extent that § 8-8-5 specifies that any interest rate may be charged on loans above $2000, but that any laws relating to unconscionability apply to such loans, it does apply to these loans.
The problem regarding the court's statute of limitations holding also stems from § 8-8-5. This Court held in Casey v.Travelers Insurance Co., 531 So.2d 846, 848 (Ala. 1988), that the legislature's reduction of the exempted loan amount in §8-8-5 from $100,000 to $2,000 "eliminat[ed] the finance charge limitation imposed in § 5-19-3(a)(3)." Section 5-19-3(a)(3) limits to 8% the maximum finance charge for loan amounts above $2,000. Section 5-19-19 specifies the liabilities of "[a]ny creditor charging a finance charge in excess of the amount authorized herein [i.e., in the Mini-Code]." It concludes:
 "No action under this section may be brought more than one year after the due date of the last scheduled payment of the agreement pursuant to which the charge was made or, in the case of open-end credit plans, one year after the excess charge is made."
Because § 8-8-5 precludes an action for excess finance charges on a loan of $2,000 or more, there is no longer any action under § 5-19-19 pertaining to such loans. Nevertheless, the trial court held that "the unconscionability claims under the Mini-Code are barred by the applicable statute of limitations found at § 5-19-19, Code." Thus, even though § 5-19-19 applies expressly only to actions based on excess finance charges, and even though there is no longer any such action on loans above $2,000, the trial court has extended § 5-19-19's statute of limitations to unconscionability claims under § 5-19-16.
To determine whether the two above-mentioned problems with the trial court's reasoning constitute reversible error, we must examine the question of unconscionability and determine whether the plaintiffs have a cause of action under § 5-19-16
that should not be barred by the statute of limitations of §5-19-19 and whether there is otherwise ground for the action to proceed on a theory of unconscionability as preserved by §8-8-5.
In West Point-Pepperell, Inc. v. Bradshaw, 377 F. Supp. 154,157-58 (M.D.Ala. 1974), the court recited the definition of "unconscionable" as follows:
 "The Supreme Court of the United States in Hume v. United States, (1889) 132 U.S. 406, 10 S.Ct. 134, 33 L.Ed. 393, defined 'unconscionable', in referring to an unconscionable contract, as being the following:
 " 'Such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.'
 "In Williams v. Walker-Thomas Furniture Co., (1965) 121 [U.S.] App.D.C. 315, 350 F.2d 445, 18 A.L.R.3rd 1297, the Court in discussing the fact that the element of unconscionability in order to justify unenforceability of the contract must be present at the time the contract is made, said, in substance, that unconscionability included:
 " '[A]n absence of meaningful choice on the part of one of the parties together with contract terms which are *Page 161 
unreasonably favorable to the other party.'
"The Court said further that:
 " 'The presence of a meaningful choice can only be determined by consideration of all the circumstances surrounding the transaction, and might be negated by "gross inequality of bargaining power," it being relevant to ascertain whether "each party * * * considering the obvious education or lack of it [had] a reasonable opportunity to understand the terms of the contract or [whether] the important terms [were] hidden in a maze of fine print and minimized by deceptive sales practices".' "
Those definitions have been quoted by this Court in Wilson v.World Omni Leasing, Inc., 540 So.2d 713 (Ala. 1989). See, also,Lloyd v. Service Corp. of Alabama, 453 So.2d 735 (Ala. 1984);Advertiser Co. v. Electronic Engineers, Inc., 527 So.2d 1317
(Ala.Civ.App. 1988).
Section 5-19-16 is entitled "Refusal by court to enforce unconscionable agreement," and reads:
 "With respect to a consumer credit sale, consumer lease or consumer loan, if the court as a matter of law finds the agreement or any provision of the agreement to have been unconscionable before, after or at the time it was made, the court may refuse to enforce the agreement, or it may enforce the remainder of the agreement without the unconscionable provision, or it may so limit the application of any unconscionable provision as to avoid any unconscionable result."
All of the plaintiffs in this action except one had prepaid their loans before this action was filed. Indeed, such prepayment was a requirement for the plaintiffs not to be barred by the res judicata effect of Murphree v. E.F. HuttonMortgage Corp., Civil Action No. 86-102 (Jefferson County Circuit Court, Bessemer Division, 1986). In Murphree, as in this case, a class of plaintiffs filed an action alleging that First American had imposed excessive, prepaid finance charges. That class was defined as "all persons who borrowed money from [First American] and executed notes . . . secured by mortgages on real property located in the State of Alabama, which notes are presently held by [E.F. Hutton]." There were over 1100 plaintiffs joined in the Murphree class action, and they reached a settlement with E.F. Hutton, which the Circuit Court of Jefferson County approved. The Murphree complaint was filed on February 17, 1986, and the court in the present case dismissed the action as to all plaintiffs whose notes were held by First American or E.F. Hutton on that date. The present action was filed on May 21, 1987, so all of the plaintiffs had either paid their notes more than a year before the complaint was filed or were barred by the judgment in Murphree.[2]
In light of these facts, the court's third holding in its summary judgment on count two is significant: "Furthermore, the unconscionability claims are dismissed because the specific unconscionability provision of the Mini-Code, § 5-19-16, has no application to loans that have previously been prepaid." This Court has recently cited with approval Cowin Equipment Co. v.General Motors Corp., 734 F.2d 1581 (11th Cir. 1984), as "holding that the doctrine of unconscionability is not available to obtain affirmative relief, but only as a defense."Sanders v. Colonial Bank of Alabama, 551 So.2d 1045, 1045 (Ala. 1989).
Sanders and most of the authorities cited therein, includingCowin, concerned the application of the Uniform Commercial Code unconscionability provision, adopted in Alabama as Ala. Code 1975, § 7-2-302. The operative language in that provision is almost identical to the operative language in § 5-19-16. Both of those sections allow *Page 162 
the court to refuse to enforce an agreement, to enforce the agreement without the unconscionable provision, or to modify the provision to avoid an unconscionable result. Each of those remedies obviously contemplates a continuing agreement or an attempt to enforce the agreement. One treatise on the U.C.C. recites the background of these provisions as follows: "When the equity courts found contracts to be unconscionable, they refused specific enforcement, or granted rescission. Affirmative recovery in damages was not given. The remedial tools available to a modern court under section 2-302 are of a similarly equitable nature." 1 J. White R. Summers,Uniform Commercial Code § 4-8 (3d ed. 1988) (footnotes omitted).
Therefore, we hold that the trial court did not err in holding that § 5-19-16 does not grant a cause of action to these plaintiffs who prepaid their loans.[3] The question remains, however, whether any other cause of action for unconscionability exists and may be pursued by virtue of §8-8-5.
The plaintiffs do not cite any authority contradicting those authorities cited above that tend to show that unconscionability does not provide an affirmative ground for relief. E.F. Hutton introduced affidavits stating that, when the plaintiffs prepaid their loans, they were given credit according to the formula for repayment of prepaid finance charges found at § 5-19-4(c). Those affidavits itemized the amounts credited to each plaintiff. Under the circumstances, we can find no error in the trial court's entry of summary judgment for E.F. Hutton on the unconscionability claim in all its aspects.
The plaintiffs further contend that summary judgment was improper because there was a pending discovery order. The mere pendency of discovery does not bar summary judgment; however, if the matter subject to production is crucial to the plaintiffs' case, then it is error for the trial court to enter summary judgment before the matter has been produced.Reeves v. Porter, 521 So.2d 963, 965 (Ala. 1988). The pending discovery that the plaintiffs' argument addresses dealt with a list of persons other than the named plaintiffs — the names, addresses, and prepayment dates of other First American borrowers in Alabama whose notes had been assigned to E.F. Hutton. This discovery is not crucial — indeed, under the facts of this case, it is irrelevant — to the named plaintiffs' claims and to the issues raised by E.F. Hutton's motion for summary judgment. Only a person who had opted out ofMurphree and who still owed money on a First American note held by E.F. Hutton could conceivably have a claim under count two, and none of the named plaintiffs fits that category. The named plaintiffs cannot stand as class representatives if they do not have viable claims themselves. See Rowan v. First Bank of Boaz,476 So.2d 44 (Ala. 1985); Rule 23(a), A.R.Civ.P. Accordingly, the trial court did not err when it granted E.F. Hutton's motion for summary judgment.
The judgment is affirmed:
ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
MADDOX, JONES, SHORES, ADAMS and STEAGALL, JJ., concur.
HORNSBY, C.J., concurs in the result.
[1] Most of the other alleged practices by First American constituted allegations of fraud and misrepresentation, and the trial court held that, because "there were no direct dealings between plaintiffs and E.F. Hutton Mortgage Corporation prior to or during the loan closings, plaintiffs cannot maintain a fraud claim against E.F. Hutton Mortgage Corporation."
[2] The trial court held that plaintiff Rosie Varner's claim was barred by the res judicata effect of Murphree. E.F. Hutton submitted uncontradicted evidence that Varner's note had not been fully paid but that she did not opt out of the Murphree
litigation, as she could have done. We note that E.F. Hutton's evidence also indicated that plaintiff Jerome Barnes paid the balance due on his note on August 28, 1986, so his claim also appears to have been barred by Murphree.
[3] We recognize that this holding makes the discussion of the statute of limitations in § 5-19-19 moot. That period of limitations begins to run on the date of final payment. As of that date, § 5-19-16 no longer provides any basis for relief, so there is no field of operation for any statute of limitations.