William Cantrell and Nancy Cantrell appeal from a partial summary judgment in favor of Walker Builders, Inc. ("Walker"), on one of their claims and the subsequent dismissal of their remaining claims. This case was transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala. Code 1975.
On March 20, 1981, the Cantrells signed a $6,600 promissory note, secured by a mortgage on their home, in favor of Walker in exchange for Walker's agreement to allow them to purchase building materials. The Cantrells purchased more than $6,600 worth of materials, obtaining the additional materials on open account. On March 11, 1985, the Cantrells executed a second note, secured by a mortgage in favor of Walker, refinancing the original debt and the additional materials they had purchased on open account. The amount of the second note was $21,000, financed at 14% interest.
On August 22, 1990, the Cantrells sued Walker, claiming: (1) that the 1985 loan violated the licensing provision of §5-19-22, Ala. Code 1975, and was, therefore, void and unenforceable as a matter of law; (2) that because Walker did not provide the cautionary statement required by § 5-19-6, Ala. Code 1975, the 1985 loan was void and unenforceable as a matter of law; (3) that because the late charges provided for in the loan agreement violated § 5-19-4, Ala. Code 1975, Walker should refund all late charges paid by the Cantrells; and (4) that in the event the trial court deemed the credit transaction to be a credit sale, the loan was unenforceable because it violated § 5-19-5, Ala. Code 1975. The Cantrells also sought a temporary restraining order enjoining Walker from initiating foreclosure proceedings. The trial court *Page 171 
granted the temporary restraining order; Walker later moved to dismiss the complaint and to dissolve the restraining order. The trial court dissolved the restraining order and, pursuant to § 6-5-440, Ala. Code 1975, dismissed the Cantrells' complaint without prejudice because, it said, the parties and issues were identical to those in Brown v. Walker Builders, Inc., a case then pending in the United States District Court for the Northern District of Alabama. The Cantrells dismissed their complaint against Walker in Brown and sought to reinstate in the state court the complaint the state court had dismissed. The trial court reinstated the complaint on September 12, 1990; Walker moved the court to "reconsider" the reinstatement. The trial court denied the motion. Neither the Cantrells nor Walker took any further action until October 17, 1994, when they both filed motions for summary judgment. The trial court's order on the motion for summary judgment states, in pertinent part:
 "Section 5-10-11(b) [sic; § 5-19-11(b)] of the Alabama Mini-Code was amended in 1990 and those amendments were effective for remedies to be entered in cases filed on or after April 17, 1990.
 "It is therefore the Order of this Court that the Plaintiff's Motion for Summary Judgment is overruled and denied. It is further Ordered that the Defendant's Motion for Summary Judgment is granted in part as follows:
 "(1) The notes and mortgages made the basis of this suit are not null and void as a result of alleged violation of the Code of Alabama, Section 5-19-1 et seq.
 "(2) The Plaintiff's claims for violation are limited to the actual damages sustained.
 "(3) Judgment is rendered against the Plaintiff for claims alleging violation of Code of Alabama, Section 5-19-4, in connection with penalties for late fees.
 "All other matters and things not specifically ruled upon are reserved for trial."
Following the pretrial hearing, the trial court entered a judgment on April 5, 1995, stating: "The attorneys . . . advised the Court that they anticipated that the [Cantrells] could not prove any actual damages and therefore requested the case be submitted for Final Decree. It is therefore ORDERED that this case is dismissed as the issues are moot."
The Cantrells appeal the summary judgment and the dismissal, arguing: (1) that Johnson v. Alabama Power Co., 664 So.2d 877
(Ala. 1995), governs the relief available to a borrower when he enters into a loan transaction with a creditor who is not licensed to issue consumer loans; (2) that those provisions of the loan that violate the Mini-Code are unenforceable; and (3) that if the transaction is deemed to be a credit sale rather than a loan, it nevertheless violates the Mini-Code and is, therefore, unenforceable. We discuss each of the Cantrells' contentions in turn.
The Role of Johnson v. Alabama Power Co.
The Cantrells contend: (1) that Johnson should govern because Walker, like Alabama Power Company, was not licensed to make consumer loans; and (2) that the amendment to § 5-19-11, Ala. Code 1975, did not overrule the common law rule adopted inDerico v. Duncan, 410 So.2d 27 (Ala. 1982).
We note initially that the supreme court affirmed the trial court's judgment in Johnson without an opinion. Accordingly,Johnson does not serve as a precedent for the courts of this state, and it cannot govern our resolution of this case. Rule 53(d), Ala.R.App.P. Further, a recent supreme court opinion addressing the issue of Mini-Code licensing violations makes it clear that the common law rule adopted in Derico is no longer the law in Alabama: "[T]he rule of Derico was abrogated when the legislature amended Ala. Code 1975, § 5-19-11, and created a specific statutory remedy." Farmer v. Hypo Holdings, Inc.,675 So.2d 387, 389 (Ala. 1996).
In 1990, the legislature, by Ala. Acts 1990, Act No. 90-384, amended § 5-19-11, Ala. Code 1975, adding subsections (b) and (c). Subsection (b) reads as follows:
 "Except where other specific remedies are provided in this chapter for violations of specific provisions of this chapter in which event such remedies shall apply, any *Page 172 
provision of a consumer credit transaction which violates the provisions of this chapter shall be unenforceable by the creditor to the extent, but only to the extent, of such violation, and the other remaining provisions and agreements shall not be affected by such violation. Any creditor who fails to comply with any requirement imposed under this chapter with respect to any person is liable to such person for the actual damage sustained by such person as a result of the failure."
Subsection (b), as amended, "provides that a debtor may recover only for the actual damage sustained as a result of the creditor's violation of a Mini-Code requirement."Farmer, 675 So.2d at 389. Hence, the rule of Derico
— that the note and mortgage are entirely void and unenforceable when a licensing violation occurs — is no longer the law in this state. Id. Subsection (b) applies to claims involving alleged Mini-Code violations, the litigation of which was commenced after April 17, 1990. Ala. Acts 1990, Act No. 90-384, § 4. The Cantrells filed their complaint on August 22, 1990.
Accordingly, we conclude that the trial court correctly ruled that the credit transaction involved was not entirely void and unenforceable. Our inquiry, however, does not end here. We must now determine if any provisions of the credit transaction are void and, thus, unenforceable.
 Enforceability of the Loan Provisions
The Cantrells argue that, because the loan document does not contain the cautionary statement required by § 5-19-6, the signature provision of the loan is unenforceable and that they should be deemed to have never signed the loan. To support their contention, they refer to § 5-19-11(b), which states that "any provision of a consumer credit transaction which violates the provisions of this chapter shall be unenforceable by the creditor to the extent, but only to the extent, of such violation."
Walker argues that the note contains cautionary language above the signature line and that there is no evidence that the Cantrells did not read and understand the note before signing it.
The cautionary statement in the note says, "I have fully read and I do clearly understand these conditions and terms". This statement is not particularly cautionary and differs dramatically from the language required by the Mini-Code: "CAUTION — IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT." § 5-19-6, Ala. Code 1975. The statement's type size differs from that required by § 5-19-6, as well. The purpose for requiring these particular words and prescribing the statement's type size and its placement "immediately" above the space for the borrower's signature is to ensure that the borrower sees it, reads it, and follows its instruction. Jackson v. CIT Group/Sales Financing, Inc.,630 So.2d 368, 373 (Ala. 1993). Section 5-19-6 prevents the creditor from burying the cautionary statement in the language of the contract. Id.
It cannot be denied that Walker violated § 5-19-6; however, it does not necessarily follow that the note is automatically unenforceable because of this violation. Pursuant to §5-19-11(b), the Cantrells are entitled to compensation for theactual damage suffered, claimed, and proved by them, as a result of the failure to provide the required cautionary statement. Farmer, 675 So.2d at 389; see also In re Crotzer,147 B.R. 252, 256 (Bankr.N.D.Ala. 1992). The absence of a conforming cautionary statement may result in loss to the borrower. See Massey v. Educators Investment Corp. of Alabama,420 So.2d 77, 79 (Ala. 1982).
At the pre-trial hearing, the Cantrells informed the trial court that they could not prove any actual damage resulting from Walker's violations of the Mini-Code. Therefore, although it is conceivable that the Cantrells may have sustained a loss as a result of the fact that the cautionary statement provided did not conform with the statutory requirements, their inability to offer any evidence of actual damage precludes any recovery on this ground. Accordingly, the trial court properly dismissed the Cantrells' damages claim based on Mini-Code violations.
The Cantrells also contend that the loan's late charge provision is unenforceable *Page 173 
because, they argue, it violates § 5-19-4, which limits the late charge a creditor can charge in some consumer credit transactions to "five percent of the amount of . . . [the] scheduled payment in default or . . . $.50 on each . . . scheduled payment in default, whichever is greater, not to exceed $100.00." § 5-19-4(a), Ala. Code 1975. Under the contract the Cantrells signed, they were required to pay late charges of 10%.
There are two statutory schemes governing the charges creditors can require of borrowers: the Mini-Code and the interest and usury statutes codified at § 8-8-1 et seq., Ala. Code 1975. The provisions of the Mini-Code and the usury statutes "are cumulative to, and not in derogation of, rights under" each statutory scheme. Ala. Acts 1988, Act No. 88-87, § 2; § 8-8-5(e), Ala. Code 1975. Section 8-8-5 of the usury statutes applies to credit transactions of $2000 or more that involve individuals, corporations, trusts, partnerships, or associations.
Relying upon an opinion issued by the attorney general's office, Walker argues that § 8-8-5, rather than § 5-19-4, applies to the 1985 transaction. The opinion states:
 "[A late] charge of not more than 5% of the amount of a scheduled payment is specifically allowed for loans made pursuant to Section 5-19-3(a). The late payment is provided for by Section 5-19-4, Code, supra. Sections 5-19-3(g) and 5-19-4(f) together with the legislative history of these sections make it clear that the late charge allowed under Section 5-19-4(a) relates only to loans made pursuant to Section 5-19-3(a) which are split-rate, pre-computed transactions.
 "Under the provisions of Section 8-8-5 the rate of interest is negotiable between the borrower and the lender, and includes specifically 'all direct and indirect charges imposed as a [sic] incident to a loan, forbearance of money or credit sale.' Section 8-8-5(c). Obviously, the 'interest' negotiated may include a charge in the event a payment is not made on time, for a loan made pursuant to Section 8-8-5. Such loans are simple interest loans of over $2,000.
". . . .
 "In view of the foregoing . . . while late charges pursuant to Section 5-19-4, Code of Alabama
1975, may not be assessed by creditors on interest bearing loans when debtors fail to make timely payments, a similar charge may be negotiated for loans made pursuant to Section 8-8-5, Code of Alabama 1975."
Banks and Banking — Interest Rates — Delinquent, Op. Att'y Gen. of Alabama (Aug. 31, 1987). According to this attorney general's opinion, a late charge can be freely negotiated between the parties to a credit transaction and is limited only by principles of unconscionability. Courts in Louisiana, Washington, and Wisconsin have recognized that late charges may be treated as provisions for interest upon the underlying obligation; the validity of such provisions depends upon the general principles of law governing the imposition of interest. See Thrift Funds of Baton Rouge, Inc. v. Jones, 274 So.2d 150
(La. 1973), cert. denied, 414 U.S. 820, 94 S.Ct. 115,38 L.Ed.2d 53 (1973); Lew v. Goodfellow Chrysler-Plymouth, Inc.,6 Wn. App. 226, 492 P.2d 258 (1971); Randall v. Home Loan Invest. Co., 244 Wis. 623, 12 N.W.2d 915 (1944).
Opinions of the attorney general are advisory in nature, and we are not obligated to follow them. Ellis v. State Nat'l Bankof Alabama, 434 F.2d 1182 (5th Cir. 1970), cert. denied,402 U.S. 973, 91 S.Ct. 1661, 29 L.Ed.2d 137 (1971). In this case, however, we conclude that this opinion of the attorney general properly states the law, and we follow it.
We note that the Cantrells never raised the issue of unconscionability, nor is there any evidence in the record indicating that the late charges were not freely negotiated. Accordingly, the trial court properly entered the summary judgment for Walker on this issue.
 Transaction as a Credit Sale
The Cantrells argue that, if we determine that the transaction was a credit sale rather than a loan, the note violates the Mini-Code and is unenforceable. The Mini-Code forbids a creditor to take a negotiable instrument, other than a check, as evidence *Page 174 
of a consumer credit sale. § 5-19-5, Ala. Code 1975. The Cantrells contend that because Walker took a note as evidence of the Cantrells' obligation, Walker violated § 5-19-5; they say this violation makes the note unenforceable under §5-19-11(b). We disagree. Even if the transaction was a credit sale, a violation of § 5-19-5 does not mean that the instrument is unenforceable; rather, it signifies that the creditor, who because of the violation may not assert holder-in-due-course status, will receive no special exemption from the liabilities prescribed in the Mini-Code. The borrower is still required to prove that the obligation is unenforceable, whether wholly or partially, regardless of the creditor's status as merely a holder. As discussed previously in this opinion, the Cantrells cannot show that the note is unenforceable under the Mini-Code. Accordingly, Walker's alleged status as a holder would not alter the resolution of this case.
AFFIRMED.
THIGPEN, MONROE, and CRAWLEY, JJ., concur.
ROBERTSON, P.J., dissents.