PER CURIAM.
This Court has granted Billie Jean Watley and John S. Watle/s petition for certiorari review of the judgment of the Court of Civil Appeals in Watley v. Transamerica Financial Services, Inc., 708 So.2d 889 (Ala.Civ.App.1997). The Court of Civil Appeals affirmed a summary judgment for Trans-america Financial Services, Inc., in the Wat-leys’ action against Transamerica alleging a violation of the cap on discount points imposed by § 5-19-4(g), Ala.Code 1975. This Court granted the petition to review the Watleys’ argument that the affirmance conflicts with United Companies Lending Corp. v, McGehee, 686 So.2d 1171 (Ala.1996) cert. denied, U.S. ——, 117 S.Ct. 1555, 137 L.Ed.2d 703 (1997), and Smith v. First Family Financial Services, Inc., 626 So.2d 1266 (Ala.1993). The question is whether the points cap imposed by § 5-19-4(g) applies to mortgage loans for amounts of $2,000 or more, notwithstanding the provision of § 8-8-5(a), Ala.Code 1975, that allows parties to agree to such an interest rate as they may determine, provided that the loan is for an amount not less than $2,000.
Subsection (g) was added to § 5-19-4 on March 11, 1988, effective “from and after June 30, 1988,” by Act No. 88-87, 1988 Ala. Acts p. 112. Subsection (g), as set out in the Act, read as follows:[1]
“(g) Notwithstanding the provisions of this or any other section of this chapter, a creditor may, pursuant to contract, in a consumer loan or consumer credit sale secured by an interest in real property, charge and collect points in an amount not to exceed five percent of the original principal balance in the case of a closed-end loan or credit sale, or five percent of the total line of credit in the case of an open-end credit plan. Points may be paid in cash at the time of the loan or credit sale, or may be deducted from the proceeds and included in the original principal balance. Points shall be. in addition to all other charges and'are fully earned on the date of the loan or credit sale and may be excluded from the finance charge for the purpose of computing the finance charge refund.”
Thus, § 5-19-f(g) prohibits the charging or collecting of points in excess of 5% of the original principal balance of a consumer loan secured by an interest in real property.
The Court of Civil Appeals held, however, that this prohibition does not apply to loans of $2,000 or more, because of the operation of § 8-8-5(a), which reads, in pertinent part:
*892 “Any person or persons, [or] corporations ... may agree to pay such rate or rates of interest for the loan or forbearance of money and for any credit sales as such person [or] corporation ... may determine, notwithstanding any law of this state otherwise prescribing or limiting such rate or rates of interest; provided, that the original principal balance of the loan or forbearance of money or credit sales is not less than $2,000; provided further, that all laws relating to unconscio-nability in consumer transactions including but not limited to the provisions of Chapter 19 of Title 5, known as the Mini-Code, shall apply to transactions covered by this section.”
The Court of Civil Appeals also quoted the last sentence of § 8-8-5(c), which provides: “The term ‘interest’ as used herein shall include all direct or indirect charges imposed as an incident to a loan, forbearance of money, or credit sales.” That court concluded: “Therefore, because the loan in this case was greater than $2,000, the Mini-Code provisions relating to the points charged on this loan do not apply; rather, § 8-8-5 applies.” 708 So.2d at 890.
As we understand its opinion, the Court of Civil Appeals held that the points limitation of § 5-19-4(g) is superseded by § 8-8-5(a) because discount points are “interest,” defined in § 8 — 8—5(c) as “direct or indirect charges imposed as an incident to a loan.” However, even the assumption that points are includable among the “direct or indirect charges” contemplated by § 8 — 8—5(c) does not put § 5-19-4(g) into conflict with § 8-8-5(a), because the two statutes can be reconciled simply by interpreting them to mean that discount points cannot constitute the entire interest on a loan, but may only be a component of the total finance charge, not to exceed five percent. This is the only reasonable construction of the two statutes’ operation in pari materia, as we shall explain below.
Section 8-8-5 was last amended in 1984, by Act No. 84-308, 1984 Ala. Acts p. 683, which “reducefd] the amount on which interest may be negotiated” from $5,000 to $2,000.[2] Thus, § 8-8-5(a) appeared in its present form when the legislature adopted § 5-19-4(g) in 1988. The construction by the Court of Civil Appeals would mean that the legislature, when it adopted a cap of 5% on points, intended for that cap to apply to loans “secured by an interest in real property,” but only to loans of amounts less than $2,000.
This amounts to saying that the legislature intended for § 5 — 19—4(g) to have virtually no application at all. Virtually no purchase-money mortgages for residential property would be for such small amounts. The median cost of a house and land in Alabama in 1990, just two years after § 5-19-4(g) was enacted, was $53,700, according to the U.S. Bureau of the Census, County and City Data Book: 199k, p. 8. Even a second mortgage or other consumer loan would not ordinarily be made for an amount less than $2,000. Loans secured by an interest in real property require payment of expenses for such items as title searches or abstract updates, title insurance, recording of mortgages, appraisals, surveys, attorney fees, mortgage preparation, and other such costs. A charge for these costs is specifically allowed by § 5-19-4(f). These costs would be prohibitively high in relation to the amount financed if the loan amount is less than $2,000.
The legislature will not be presumed to have done a futile thing in enacting a statute. “[I]t is presumed that the legislature does not enact meaningless, vain or futile statutes.” Druid City Hospital Bd. v. Epperson, 378 So.2d 696, 699 (Ala.1979). Indeed, in one of the earliest cases interpreting the Mini-Code, this Court said: “There is a strong presumption that the legislature did not do a futile thing when it expressly brought real estate mortgage loans within the regulatory purview of the Mini-Code.” Fletcher v. Tuscaloosa Federal Savings & *893 Loan Ass’n, 294 Ala. 173, 176, 314 So.2d 51, 53 (1975).
“ ‘It has been called a golden rule of statutory interpretation that unreasonableness of the result produced by one among alternative possible interpretations of a statute is reason for rejecting that interpretation in favor of another which would produce a reasonable re-sult_ It is fundamental ... that departure from the literal construction of a statute is justified when such a construction would produce an absurd and unjust result and would clearly be inconsistent with the purposes and policies of the act in question. A construction resulting in absurd consequences as well as unreasonableness will be avoided.’
“Norman J. Singer, Sutherland Statutory Construction § 45.11, p. 61 (5th ed.1993).”
Ex parte Meeks, 682 So.2d 423, 428 (Ala.1996).
No departure from the literal language of § 5-19-4(g) is needed. It may be given full effect, and § 8-8-5(a) may be given full effect, without any deviation from the terms of either Code section. Section 8-8-5(a) applies to the total amount of interest on a loan; § 5-19-4(g) applies only to points, which are simply one example of a “finance charge” as defined by § 5-19-l(l).[3] They presumably may be one component of a permissible rate of “interest” as defined by § 8-8-5(c). • Thus, although the total “interest” may be at such a rate as the parties may determine, § 8-8-5(a), the points included in a “finance charge” may not exceed 5% of the original principal balance or the total line of credit, § 5-19-4(g).
Statutes should be construed to operate in harmony with each other, if possible.
“In determining legislative intent, statutes are, where possible, construed in harmony with statutes existing at the time of enactment, so that each is afforded a field of operation. Waters v. City of Birmingham, 282 Ala. 104, 209 So.2d 388 (1968).”
Sullivan v. State ex rel. Attorney General, 472 So.2d 970, 973 (Ala.1985). Sections 8-8-5 and 5-19-4(g) can be construed together without limiting or modifying either.
The enactment of Act No. 88-87 in 1988 should be looked at in light of the facts and circumstances shown in Williams v. E.F. Hutton Mortgage Corp., 555 So.2d 158 (Ala.1989). Before 1986, First American Mortgage Company had been making mortgage loans that included nonrefundable prepaid finance charges of 40%. E.F. Hutton had purchased these loans. On February 17, 1986, a class action, Murphree v. E.F. Hutton, was filed against E.F. Hutton in the Jefferson County Circuit Court. On May 21, 1987, Brenda Williams and others filed a similar action, which was the subject of the opinion in Williams v. E.F. Hutton. Both of these actions alleged “that First American had imposed excessive, prepaid finance charges.” 555 So.2d at 161. For reasons we will not repeat here, this Court in Williams affirmed a summary judgment for E.F. Hutton.
Our point here is that Williams and Murphree both concerned allegations that nonrefundable prepaid charges of 40% were excessive and unconscionable. After those two actions were filed, and before this Court decided the appeal in Williams, the Legislature enacted Act No. 88-87, amending § 5-19-4 to expressly allow mortgage lenders to charge and collect points, but to limit those points at 5%. Any allegation, such as was made in Williams, that points are unconscionable simply because they are nonrefundable, is precluded by the enactment of Act No. 88-87.
However, if this Court were to hold that § 5-19-4(g) does not apply to loans of $2,000 or more because of the operation of § 8-8-5, would that mean that there is no express provision allowing mortgage lenders to charge and collect points? A creditor could answer this question by arguing that § 5-19-4(g) allows a creditor to charge and collect points on all mortgage loans but, by reference to § 8-8-5, caps those points only as to loans of less than $2,000. This would be a strained and unnatural reading of § 5-19-4(g), requiring the first part of the sentence to apply to all loans and the second part, with *894 no qualifying language, to apply only to mortgage loans of less than $2,000. We will not attribute such a deceptive drafting technique to the legislature.
Section 2 of Act No. 88-87 is also instructive:
“The provisions of this section are cumulative to, and not in derogation of, rights under other provisions of state and federal law and shall not in any way repeal, amend or modify the provisions of Section 8-8-5, Code of Alabama 1975, as amended.”
(Emphasis added.) As explained above, this Act may be read in pari materia with § 8-8-5 so as to give effect to both provisions, without repealing, amending, or modifying § 8-8-5. As the legislature said,' Act No. 88-87 was merely cumulative to § 8-8-5, providing for and limiting the charging and collecting of points, as to which § 8-8-5 is silent.
Moreover, the last sentence of § 5-19-4(g), as adopted by Act 88-87, § 1, states that “Points shall be in addition to all other charges and are fully earned on the date of the loan or credit sale and may be excluded from the finance charge for the purpose of computing the finance charge refund.” Thus, the prohibition against denominating more than 5% of the total finance charge or interest as points is a reasonable purpose for the legislature to have intended, because of the fact that points are “fully earned on the date of the loan or credit sale,” § 5 — 19—4(g), and therefore are not refundable if the loan is paid before its due date. Even though § 8-8-5 allows the interest rate to be as high as the market will bear and as high as the doctrine of uneonscionability will allow, § 5-19-4(g) prevents a creditor from charging an excessive portion of that rate as “points” and thereby making the “interest” nonrefundable.
The Mini-Code is a consumer protection statute, and is due to be construed with consumer protection in mind.
“The Mini-Code, § 5-19-1 through § 5-19-31, was enacted by the legislature to provide a comprehensive consumer finance law. ... The aim is to protect the consumer.”
McCullar v. Universal Underwriters Life Ins. Co., 687 So.2d 156, 163 (Ala.1996) (citations omitted). Construction of the Mini-Code “must be made with the protection of the consumer in mind.” Spears v. Colonial Bank of Alabama, 514 So.2d 814, 816 (Ala.1987). Allowing § 5-19-4(g) to have the application that it appears on its face to have (i.e., an application to all loans secured by an interest in real property, not just to those that are for less than $2,000) will provide the protection to consumers that the legislature intended for the Mini-Code to provide.
For the foregoing reasons, the Court of Civil Appeals erred in holding that § 8-8-5(a) precludes § 5-19-4(g) from applying to loans of $2,000 or more that are secured by an interest in real property.
We make no decision whether Cantrell v. Walker Builders, Inc., 678 So.2d 169 (Ala.Civ.App.1996), on which the Court of Civil Appeals relied in affirming the circuit court’s judgment for Transamerica, was correctly decided. Cantrell concerned the limitation imposed by § 5-19-4(a) on late fees. It is distinguishable if only because § 5-19-4(a) reads essentially as it did before § 8-8-5 was amended to reduce the amount on which interest rates were negotiable from $100,000 to $5,000 and then to $2,000. The application of § 5-19-4(a) could therefore be governed by the subsequent amendment of § 8-8-5, whereas § 5-19-4(g) was enacted after those amendments to § 8-8-5. Furthermore, the Court of Civil Appeals relied in Cantrell on an attorney general’s opinion, which that court quoted as stating, in part:
“The late payment is provided for by Section 5-19-4, Code, supra. Sections 5-19-3(g) and 5-19-4(f) together with the legislative history of these sections make it clear that the late charge allowed under Section 5-19-4(a) relates only to loans made pursuant to Section 5-19-3(a) which are split-rate, pre-computed transactions.”
Cantrell, 678 So.2d at 173, quoting “Banks and Banking — Interest Rates — Delinquent, Op. Att’y Gen. of Alabama (Aug. 31,1987).”[4] *895 The attorney general concluded that interest-bearing loans could not be assessed a late charge pursuant to § 5-19-4(a), but that such a late charge could be negotiated pursuant to § 8-8-5. These questions are beyond the scope of the issues presented by the Watleys’ certiorari petition, and we do not decide them.
Because it ruled as a matter of law that § 5-19-4(g) does not apply to the Wat-leys’ loan, the Court of Civil Appeals did not rule on the merits of their claim that the points charged by Transamerica exceeded the 5% limit imposed by § 5-19-4(g). The circuit court entered a summary judgment for Transamerica, based on a holding that the loan does not in fact violate § 5-19-4(g):
“Plaintiffs borrowed points in this instance. Therefore, points were included in the original principal balance of $41,061.05, which is shown on the promissory note as the total amount of the loan. The amount of the point charges was $2,053.05. $2,053.05 divided by $41,061.05 is .0499999. Therefore, the points charged did not exceed the 5% limit contained in Section 5-19-A(g).
“Although the foregoing is clear from the plain language of the statute, the Court notes that it is also consistent .with the State Banking Department’s interpretation of the statute as evidenced by the Affidavit of Robert K. Floyd which provides in part as follows:
“ ‘A lender can determine whether it has complied with the statute by taking the amount of points charged and dividing that amount by the total amount of the loan, which would include the points, if they are loaned to the borrower. If the resulting quotient is .05, or less the lender has complied with Section 5-19-4(g), because the points would not exceed five percent of the original principal balance of the loan.’ ”
Section 5-19~4(g), as it applied to the Wat-leys’ loan, read:
“(g) Notwithstanding the provisions of this or any other section of this chapter, a creditor may, pursuant to contract, in a consumer loan or consumer credit sale secured by an interest in real property, charge and collect points in an amount not to exceed five percent of the original principal balance _ Points ... may be deducted from the proceeds and included in the original principal balance.”
Act No. 88-87, 1988 Ala. Acts pp. 113-14 (emphasis added).
This language allowed the points to be included as part of the “original principal balance,” meaning that the “proceeds” plus the points equaled the original principal balance. The amount of allowable points was to be calculated on the basis of this total, not simply on the proceeds or some other smaller amount. Section 5-19-4(g), as it applied to the Watleys’ loan, therefore expressly provided that the 5% maximum amount of points was 5% of the total amount borrowed, including the points. If a creditor wished to collect the maximum allowable amount of points, the calculation of the amount of points would require a formula that took into account the creditor’s intention that the proceeds would be 95% of the original principal balance of the loan, and the points would be the other 5%. Once an “original principal balance” and an amount to be charged and collected as points were established, the question of whether the points exceeded- the 5% maximum would be answered by the calculation provided by Mr. Floyd as quoted by the circuit court.
In short, the circuit court correctly interpreted § 5-19-4(g) as it applied to this case. The Watleys argue that this impermissibly allows the creditor to collect “points on points,” but the plain language of the statute permitted this, if the debtor borrowed the amount that was charged and collected as points.
The above analysis may have been modified by an amendment to § 5-19-4(g). Act No. 96-576, 1996 Ala. Acts p. 887, adopted a comprehensive amendment to the Mini-Code. It reenacted § 5-19-4(g) to read:
“A creditor may, pursuant to a consumer credit transaction contract secured by an interest in real property, charge and collect points in an amount not to exceed five percent of the original principal balance in the case of a closed-end consumer credit *896 transaction, or five percent of the total line of credit in the case of an open-end credit plan. Points may be paid in cash at the time of the consumer credit transaction, or may be deducted from the proceeds and included in the original amount financed for the purposes of Section 5-19-3 or financed under the open-end credit plan. Points shall be in addition to all other charges, are fully earned on the date of the consumer credit transaction, and may be excluded from the finance charge for the purpose of computing any finance charge credit or refund.”
(Emphasis added.) The first sentence still allows the creditor to charge points “in an amount not to exceed five percent of the original principal balance in the case of a closed-end consumer credit transaction.” The next sentence now allows the creditor to deduct the points from the proceeds of the loan and to include the amount of the points “in the original amount financedWe do not decide in this case whether the term “original principal balance” has a meaning different from the term “original amount financed,” but it appears that this use of different terms may mean that for loans after the effective date of Act No. 96-576, points may be included in the amount financed, but may be calculated so as not to exceed 5% of a smaller amount, the original principal balance, which presumably would not include the points.
However, the prior version of § 5-19-4(g) clearly supports the circuit court’s judgment holding that the points charged on the Wat-leys’ loan did not exceed the 5% maximum. For that reason, the judgment of the Court of Civil Appeals is due to be affirmed. For the reasons stated earlier in this opinion, however, we disapprove and overrule the rationale given by the Court of Civil Appeals in its opinion affirming the judgment.
AFFIRMED.
ALMON,* SHORES, KENNEDY,* COOK, and BUTTS, JJ., concur.
HOOPER, C.J., and MADDOX, HOUSTON, and SEE, JJ., concur in the result, but disagree with part of the rationale, with opinions by HOOPER, C.J., and HOUSTON, J.

. Subsection (g) now reads differently, because of a 1996 amendment by Act No. 96-576, 1996 Ala. Acts. See the discussion near the end of this opinion.

. When the Mini-Code was enacted in 1971, the amount of a loan on which interest was unlimited stood at $100,000. Act No. 27, 1970 Extraordinary Session, 1969-70 Ala. Acts p. 2628. This amount was reduced to $5,000 in 1980. Act No. 80-435, 1980 Ala. Acts p. 659. Thus, the interest rate limitation imposed by § 5-19-3 on loans above $2,000 was superseded by § 8-8-5 from 1980 until 1996, when § 5-19-3 was amended by Act No. 96-576; 1996 Ala. Acts p. 887.

. See Smith v. First Family Financial Services, Inc., 626 So.2d 1266, 1271 (Ala.1993).

. This Court has obtained a copy of this informal opinion bearing the number 87-00293.